IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| C.R. BARD, Inc., and<br>DAVOL, INC., | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 02-515ML |
| v. | ) | |
| | ) | Judge Mary M. Lisi |
| STRYKER CORPORATION, | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT STRYKER CORPORATION'S RENEWED MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT OR, IN THE ALTERNATIVE, INVALIDITY OF THE '452 PATENT**

Joseph Avanzato (#4774)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
(401) 274-7200

Gregory J. Vogler (admitted *pro hac vice*)
Sharon A. Hwang (admitted *pro hac vice*)
McANDREWS, HELD & MALLOY, LTD.
500 West Madison Street
Chicago, Illinois 60661
(312) 775-8000

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

I. INTRODUCTION ........ 1

II. SUMMARY JUDGMENT OF NONINFRINGEMENT IS APPROPRIATE ........ 2

A. Claim Construction ........ 4

1. Tip Having A "Fluid Path That Channels Aspirated Irrigation Fluid" of Claim 9 and 30 ........ 6

2. Tip For "Directing The Aspirated Irrigation Fluid Along A Path That Is Disposed Exteriorly Of The Handpiece" of Claim 10 ........ 10

B. The Stryker InterPulse Does Not Literally Infringe ........ 11

1. Claim 9 and 30 ........ 13

2. Claim 10 ........ 14

C. Prosecution History Estoppel Precludes Infringement Under Doctrine Of Equivalents ........ 14

1. Claims 9 and 30 ........ 14

2. Claim 10 ........ 16

III. ALTERNATIVELY, THE '452 PATENT IS INVALID AS ANTICIPATED SINCE BARD SUED THE PRIOR ART ........ 16

IV. CONCLUSION ........ 19

# TABLE OF AUTHORITIES

## CASES

*Alloc, Inc. v. ITC*, 342 F.3d 1361 (Fed. Cir. 2003) .......... 5, 6

*Alza Corp. v. Mylan Labs.*, 391 F.3d 1365 (Fed. Cir. 2004) .......... 5, 9

*Apotex USA, Inc. v. Merck & Co., Inc.*, 254 F.3d 1031 (Fed.Cir. 2001) .......... 17

*ASM Am., Inc. v. Genus, Inc.*, 401 F.3d 1340 (Fed. Cir. 2005) .......... 3

*Astrazeneca AB v. Mutual Pharmaceutical Co., Inc.*, 384 F.3d 1333 (Fed. Cir. 2004) .......... 5, 9

*Athletic Alternative, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573 (Fed. Cir. 1996) .......... 11

*Backyard Nature Products, Inc. v. Woodlink, Ltd.*, 2003 U.S. App. LEXIS 24077 (Fed. Cir. 2003) .......... 6

*Ballard Medical Products v. Allegiance Healthcare Corp.*, 268 F.3d 1352 (Fed. Cir. 2001) .......... 3

*Boss Control, Inc. v. Bombardier Inc.*, 2005 U.S. App. LEXIS 10543 (Fed. Cir. June 8, 2005) .......... 3, 5, 9

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 381 F.3d 1371 (Fed. Cir. 2004) .......... 5

*Comark Communications v. Harris Corp.*, 156 F.3d 1182 (Fed. Cir. 1998) .......... 5

*C.R. Bard, Inc. v. United States Surgical Corp.*, 388 F.3d 858 (Fed. Cir. 2004) .......... 5, 7, 9, 10

*Datapoint Corp. v. Standard Microsystems Corp.*, 2002 U.S. App. LEXIS 3617 (Fed. Cir. February 15, 2002) .......... 6

*Dawn Equip. Co. v. Kentucky Farms*, 140 F.3d 1009 (Fed. Cir. 1998) .......... 14

*Dow Chemical Co. v. Astro-Valcour, Inc.*, 267 F.3d 1334 (Fed. Cir. 2001) .......... 17, 19

*Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370 (Fed. Cir. 2004) .......... 3

*General Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978 (Fed. Cir. 1997) .......... 3

*Gentry Gallery v. Berkline Corp.*, 134 F.3d 1473 (Fed. Cir. 1998) .......... 5

*Giora George Angres, Ltd. v. Tinny Beauty & Figure*, 1997 U.S. App. LEXIS 15342 (Fed. Cir. June 26, 1997) .......... 17

*Golden Star, Inc. v. Wilen Cos.*, 37 U.S.P.Q.2d 1894 (Fed. Cir. December 19, 1995) ........ 17

*In re Schreiber*, 128 F.3d 1473 (Fed. Cir. 1997) ........ 18

*In re Spada*, 911 F.2d 705 (Fed. Cir. 1990) ........ 18

*Interactive Gift Express v. Compuserve*, 256 F.3d 1323 (Fed. Cir. 2001) ........ 4

*London v. Carson Pirie Scott & Co.*, 946 F.2d 1534 (Fed. Cir. 1991) ........ 3

*Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572 (Fed. Cir. 1996) ........ 17

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996) ........ 2, 4

*Microsoft Corp. v. Multi-Tech, Sys,*. 357 F.3d 1340 (Fed. Cir. 2004) ........ 7

*Molinaro v. Fannon/Courier Corp.*, 745 F.2d 651 (Fed. Cir. 1984) ........ 4

*Netword, LLC v. Centraal Corp.*, 242 F.3d 1347 (Fed. Cir. 2001) ........ 6

*Novartis Corp. v. Ben Venue Labs.*, 271 F.3d 1043 (Fed. Cir. 2001) ........ 3

*Ohio Cellular Prods. Corp. v. Adams USA*, 1996 U.S. App. LEXIS 33550 (Fed. Cir. December 23, 1996) ........ 17

*Peters v. Active Mfg. Co.*, 129 U.S. 530 (1889) ........ 16

*Porter v. Farmers Supply Serv., Inc.*, 790 F.2d 882 (Fed. Cir. 1986) ........ 3

*Schoell v. Regal Marine Indus.*, 247 F.3d 1202 (Fed. Cir. 2001) ........ 14

*Southwall Technologies v. Cardinal IG Co.*, 54 F.3d 1570 (Fed. Cir. 1995) ........ 16

*Techsearch, LLC v. Intel Corp.*, 286 F.3d 1360 (Fed. Cir. 2002) ........ 3

*Texas Digital v. Telegenix*, 308 F.3d 1193 (Fed. Cir. 2002) ........ 4

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) ........ 4

*Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546 (Fed. Cir. 1989) ........ 4

*Zygo Corp. v. Wyco Corp.*, 79 F.3d 1563 (Fed. Cir. 1996) ........ 3

## RULES

Fed. R. Civ. P. 56 ........................................ 1, 2

## STATUTES

35 U.S.C. § 102 ........................................ 11, 16, 17, 19

## OTHER

MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 2001) ........................................ 6

## I. INTRODUCTION

Pursuant to FED. R. CIV. P. 56, defendant Stryker Corporation ("Stryker") moves for summary judgment that, as a matter of law, Stryker does not infringe any claim of U.S. Patent No. 6,485,452 ("the '452 patent") or the associated reexamination certificate for the '452 patent[1]. The reexamination proceedings, initiated and prosecuted by Plaintiffs C.R. Bard and Davol, Inc. ("Bard"), did not address the issue of noninfringement. In the alternative, if the Court applies Bard's overly broad claim construction to cover the InterPulse product, Stryker moves for summary judgment that the claims of the '452 patent are invalid because the InterPulse product predates the '452 patent. Bard intentionally avoided addressing the prior art InterPulse product during the reexamination proceedings before the Patent Office because to do so would have invalidated the '452 patent. If granted, either motion disposes of Bard's claims in this action. Both motions turn on the legal issue of claim interpretation.

The '452 patent relates to a rather simple medical irrigation device used in nursing homes and other health care facilities to rinse and clean bed sores and other injuries on the body surface. The device, called a suction irrigator, rinses (irrigates) the site and then suctions out (aspirates) the fluid. As shown in Figure 1, the medical irrigation system of the '452 patent includes: (a) a specially designed tip




[1] The Ex Parte Reexamination Certificate (Exhibit A) for U.S. Patent No. 6,485,452 issued on May 10, 2005. Stryker will refer to the '452 claims in this motion as set forth in the '452 Ex Parte Reexamination Certificate.

16 having a bypass suction tube 20 (highlighted in blue); (b) a "conventional handpiece 10" (yellow) with an irrigation tube 24 (orange) and a suction tube 22 (green) and (c) irrigation fluid bags 12 (pink).

Noninfringement turns on the legal interpretation of the claim terms relating to the bypass suction tube 20 of the special tip 16 that prevents aspirated fluid from entering the suction tube 22 of the handpiece 10. Because the accused InterPulse product does not have the claimed features, Stryker is entitled to summary judgment on noninfringement as a matter of law.

In order to support its claim of infringement, Bard is trying to read out limitations from the claims. The disputed claims each require that a tip include a fluid path to divert or bypass aspirated fluid outside the handpiece suction tube. Bard would like to eliminate this requirement from each of the disputed claims because the accused products are missing it. However, the bypass limitation exists in the claims but is missing in the accused InterPulse product. The result is no infringement.

Bard is on the horns of a dilemma. If Bard interprets the claim language broadly to capture Stryker's InterPulse product, the claims also capture the prior art and are invalid as a matter of law. Bard sued the prior art: Stryker's accused InterPulse product predates the '452 patent. Patent claims that are argued by Bard to cover the prior art are invalid. Thus, under a broad interpretation of the '452 patent, Stryker is entitled to summary judgment of invalidity.

## II. SUMMARY JUDGMENT OF NONINFRINGEMENT IS APPROPRIATE

Summary judgment "shall be rendered forthwith" where "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The first step of an infringement analysis is claim construction, which is a matter of law exclusively within the province of the court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372, 116 S.Ct. 1384, 1387 (1996). The second step, determining whether the properly

construed claims encompass the accused structure, is a question of fact. *General Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 981 (Fed. Cir. 1997). Nevertheless, summary judgment of noninfringement is appropriate where there is no genuine issue of material fact such that, under a proper claim construction, a finding of infringement is not possible. *Porter v. Farmers Supply Serv., Inc.*, 790 F.2d 882, 884 –86 (Fed. Cir. 1986). The Federal Circuit regularly affirms the grant of summary judgment of noninfringement. *E.g. Boss Control, Inc. v. Bombardier Inc.,* 2005 U.S. App. LEXIS 10543 at *21-22 (Fed. Cir. June 8, 2005); *ASM Am., Inc. v. Genus, Inc.,* 401 F.3d 1340, 1342 (Fed. Cir. 2005); *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1372 (Fed. Cir. 2004); *Techsearch, LLC v. Intel Corp.,* 286 F.3d 1360 (Fed. Cir. 2002); *Novartis Corp. v. Ben Venue Labs.,* 271 F.3d 1043, 1046 (Fed. Cir. 2001); *Ballard Medical Products v. Allegiance Healthcare Corp.,* 268 F.3d 1352, 1363 (Fed. Cir. 2001).

To prove infringement of an asserted claim, Bard must show, by a preponderance of the evidence, "the presence of every [claim] element or its substantial equivalent in the accused device." *Zygo Corp. v. Wyco Corp.*, 79 F.3d 1563, 1568 (Fed. Cir. 1996)(emphasis added). Infringement is avoided if even one claim element is missing from the accused product. *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1539 (Fed. Cir. 1991)(emphasis added).

For purposes of efficiency, the present motion focuses on one claim element in each of independent claims 9, 10, and 30 which is missing from Stryker's InterPulse product.[2] Noninfringement turns on the legal interpretation of "externally of the handpiece and directly to a suction source" in claims 9 and 30, and "path that is disposed exteriorly of the handpiece" in claim 10. Each of these claim limitations require a tip having a bypass suction fluid path to

---

[2] Bard has asserted the following claims of the '452 patent: Claim 9, 10, 20-21, 23-24, 26, 28, and 30. (Plaintiff's Second Supplemental Answers to Stryker's First Set of Interrogatories, May 6, 2005).

prevent aspirated fluid from entering a handpiece suction tube. Of course, if independent claims 9, 10 and 30 are not infringed, then dependent claims 20, 21, 23-24, 26 and 28, which depend from those independent claims, cannot be infringed as a matter of law. *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 (Fed. Cir. 1989). Thus, this motion is straightforward and involves claim interpretation, an issue for the court. Disputes about claim interpretation do not preclude summary judgment. *Molinaro v. Fannon/Courier Corp.*, 745 F.2d 651, 654 (Fed. Cir. 1984) ("Claim interpretation, however, is an issue *of law*, and a dispute respecting that legal issue does not preclude summary judgment."). A ruling on summary judgment that Stryker does not infringe independent Claims 9, 10 and 30 will dispose of this case.

**A. Claim Construction**

Claims define the metes and bounds of an invention. The public generally, and the patentee's competitors in particular, are entitled to clear and specific notice of what the inventor claims as his invention. *Markman*, 517 U.S. at 390. Fairness dictates the public be able to ascertain what falls within the scope of patent claims when the patent issues, not during the middle of a lawsuit. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996). As such, claims must be interpreted in view of the intrinsic record, including the specification, and file history. *Interactive Gift Express v. Compuserve*, 256 F.3d 1323, 1331 (Fed. Cir. 2001).

In construing patent claims, the Court looks first to the claim language. *Vitronics*, 90 F.3d at 1582. Claim terms are given their ordinary meaning unless the patent or its file history clearly specifies a special definition. *See Texas Digital v. Telegenix,* 308 F.3d 1193, 1202 (Fed. Cir. 2002). Although the prosecution history may shed light on a claim term's meaning, the patent specification is the "single best guide to the meaning of a disputed term." *Vitronics*, 90 F.3d at 1582.

> A claim limitation is always construed in light of the specification, whatever the form of the claim. The words of patent claims have the meaning and scope with which they are used in the specification and the prosecution history. The best source for understanding a technical term is the specification from which it arose, informed, as needed, by the prosecution history. All claims must be construed in light of the specification and the prosecution history.

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.,* 381 F.3d 1371, 1381-82 (Fed. Cir. 2004)(internal citations omitted). The Federal Circuit explained that the specification should be consulted "to ascertain the meaning of a claim term as it is used by the inventor in the context of the entirety of his invention." *Comark Communications v. Harris Corp*., 156 F.3d 1182, 1187 (Fed. Cir. 1998). While a claim need not be limited to a preferred embodiment, "the scope of the right to exclude may be limited by a narrow disclosure." *Gentry Gallery v. Berkline Corp.*, 134 F.3d 1473, 1479 (Fed. Cir. 1998).

"[W]here the specification makes clear at various points that the claimed invention is narrower than the claim language might imply, it is entirely permissible and proper to limit the claims." *Alloc, Inc. v. ITC*, 342 F.3d 1361, 1370 (Fed. Cir. 2003); *C.R. Bard, Inc. v. United States Surgical Corp.*, 388 F.3d 858, 865-66 (Fed. Cir. 2004) (holding that the specification of the patent-in-suit required that the claim term "plug" must be a pleated plug); *Astrazeneca AB v. Mutual Pharmaceutical Co., Inc.*, 384 F.3d 1333, 1339 (Fed. Cir. 2004) (holding that the specification limited the scope of the claim term "solubilizer" to surfactants); *Boss Control, Inc.,* 2005 U.S. App. LEXIS 10543 at *7-15 (holding that the specification limited the construction of the claim term "interrupt" to a definition more detailed than simple on-off control and, in doing so, rejecting plaintiff's arguments that ordinary meaning and dictionary definitions of "interrupt" should be applied); *Alza Corp. v. Mylan Labs.*, 391 F.3d 1365, 1370 (Fed. Cir. 2004) (holding that the specification and file history required the claim term "skin permeable form" be construed

to exclude fentanyl citrate).[3] Claims cannot enlarge the scope of the patent grant beyond what the inventor has described as the invention. *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1352 (Fed. Cir. 2001).

### 1. Tip Having A "Fluid Path That Channels Aspirated Irrigation Fluid" of Claims 9 and 30

Independent claims 9 and 30 recite a "tip comprising…a suction tube…**the suction tube having a fluid path that channels aspirated irrigation fluid externally of the handpiece and directly to a suction source**, the suction tube and irrigation tube being detachable together from the handpiece **whereby the tip can be discarded, enabling the handpiece to be reused**." (Ex. A, 1:56-2:2; Ex. B, 2:41-65) (emphasis added); see also Stmt. of Undisputed Facts ¶8.

Claims 9 and 30 require a tip having a fluid path to bypass around the handpiece suction tube. The proper interpretation of a "tip comprising" a "suction tube having a fluid path that channels aspirated irrigation fluid externally of the handpiece and directly to a suction source" is **a tip suction tube having a fluid path that diverts aspirated irrigation fluid outside of the handpiece suction tube and directly to a suction source**. This interpretation is supported by the plain language of the claim, as well as by the intrinsic record.

As an initial matter, the claim term "directly" derives from "direct," which means "proceeding from one point to another in time or space without deviation or interruption." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY, 327 (10th ed. 2001). The ordinary meaning of

---

[3] For similar rulings, see also *Alloc, Inc.*, 342 F.3d at 1370(holding that the claims require "play" in the subject flooring systems because the specification teaches that the invention provides for "play" in the positioning of floor panels, even though the claims at issue do not recite the term "play"); *Backyard Nature Products, Inc. v. Woodlink, Ltd.*, 2003 U.S. App. LEXIS 24077 (Fed. Cir. 2003)(limiting the term "mesh" to "expanded mesh" due to the specification); *Datapoint Corp. v. Standard Microsystems Corp.*, 2002 U.S. App. LEXIS 3617 (Fed. Cir. February 15, 2002) (holding that the specification required the claim term "LANs" [local area networks] be limited to "bus-type LANs.").

the claim language suggests that the tip suction tube channels aspirated fluid directly to the suction source without ever entering the handpiece suction tube.

Reinforced throughout the specification of the '452 patent is that the language "externally of the handpiece and directly to a suction source" means that aspirated fluid travels directly from the tip suction tube to an external suction source without communicating with the handpiece suction lumen. For example, in the Summary of the Invention, Bard explains that

> [I]n accordance with one aspect of the invention, the suction lumen in a detachable suction and irrigation tip is configured so that **aspirated fluid and debris are passed directly to an external suction source** when the tip is used with a conventional handpiece having both suction and irrigation lumens. **No portion of the suction lumen in the tip is in fluid communication with the suction lumen in the handpiece**.

(Ex. B, 2:17-24)(emphasis added). The Federal Circuit has specifically held that statements such as this in the Summary of the Invention section of a patent carry great weight in determining the scope of the invention and claim construction. *See Microsoft Corp. v. Multi-Tech, Sys,.* 357 F.3d 1340,1348 (Fed. Cir. 2004)("Those statements, some of which are found in the 'Summary of the Invention' portion of the specification, are not limited to describing a preferred embodiment, but more broadly describe the overall inventions . . ." )(emphasis added); *C.R. Bard,* 388 F.3d at 864 (in reviewing statements in the patent's "Summary of the Invention", the Court held that "other things being equal, certain sections of the specification are more likely to contain statements that support a limiting definition of a claim term than other sections...")(emphasis added).

The '452 patent further states that "[i]t is among the objects of the invention to provide combination suction and irrigation tip that it [*sic*] detachably connectible to a handpiece and in which biological debris aspirated through the suction lumen bypasses the handpiece." (*Id.*, 2:53-56); *See also Id.* at 2:13-15 ("It therefore is among the general objects of the invention to provide an improved suction/irrigation tip that avoids contamination of the handpiece."). Figure 7 of the

channels aspirated irrigation fluid externally of the handpiece and directly to a suction source" as claimed.

The '452 patent contemplates the use of a specially-designed tip with a conventional handpiece having both a suction lumen and an irrigation lumen to permit the handpiece to be reusable. (Ex. A and B Abstract; Ex. B 2:17-24, 53-56; 3:31-34; 4:3-7; 6:46-52). Handpiece reusability is achieved in the '452 patent by using a specially-designed tip with a bypass fluid path and a plug to prevent aspirated fluid from entering the suction tube of a conventional handpiece. (*Id.* 2:17-25)("[A]spirated fluid and debris are passed directly to an external suction source when the tip is used with a conventional handpiece . . . No portion of the suction lumen in the tip is in fluid communication with the suction lumen in the handpiece."); (Id. 6:46-50)("The handpiece suction tube 22 remains unused."). Since the suction tube is plugged and does not come into contact with aspirated irrigation fluid, the suction tube of the handpiece is not contaminated. As a result, the handpiece can be reused.

Stryker achieves handpiece reusability in a completely different way, with the handpiece and tip performing different functions than in the '452 patent. Instead of plugging the suction lumen of the handpiece, the suction lumen of the InterPulse handpiece is located along the spine of the handpiece such that the suction tubing can be completely removed and replaced along with the InterPulse tips. (Ex. E, Noonan Decl., ¶¶4-9). Moreover, the InterPulse tips do not include a bypass fluid path directly connected to a suction source. The '452 patent does not disclose or suggest achieving reusability by repositioning the suction tubing of the handpiece to a location that permits removal and replacement such as in Stryker's InterPulse handpiece. Since the InterPulse handpiece and tips have different functions and are configured in a different way than the claimed handpiece and tip, there can be no infringement under the doctrine of equivalents.

Importantly, during the original prosecution of the '452 patent, Bard argued in a July 12, 2002 Amendment that

> The invention provides an arrangement by which the flow path of aspirated material is diverted away from and bypasses the handpiece. . . the detachable tip 16 has a suction tube 46 with a conduit 60 that defines a fluid bypass path that prevents aspirated material from being channeled into contact with the handpiece 10 and its suction lumen 22 (see all claims). The handpiece thus does not become contaminated and may be used again . . .

(Ex. D, p. 3) (emphasis added; parenthetical in original). Since Bard explained that all of the claims require a fluid bypass path that prevents aspirated material from being channeled into the handpiece suction tube, Bard is prevented by prosecution history estoppel from attempting to interpret claim 9 and/or claim 30 so broadly as to encompass the InterPulse system. *Southwall Technologies v. Cardinal IG Co.*, 54 F.3d 1570, 1579 (Fed. Cir. 1995).

### 2. Claim 10

For the same reasons described above with respect to claims 9 and 30, the InterPulse system does not infringe claim 10 under the doctrine of equivalents because directing aspirated irrigation fluid through the tip suction tube to a handpiece suction tube is not equivalent to "directing the aspirated irrigation fluid along a path that is disposed exteriorly of the handpiece."

## III. ALTERNATIVELY, THE '452 PATENT IS INVALID AS ANTICIPATED SINCE BARD SUED THE PRIOR ART

If this Court applies Stryker's claim constructions, then Stryker must be found to not infringe the '452 patent. However, if the asserted claims are construed broadly (and in Stryker's view, incorrectly) as to cover the accused InterPulse, those claims would then also cover the prior art and be invalid under 35 U.S.C. §§102(a) and(g).

Bard sued the prior art: Stryker's accused InterPulse product predates the '452 patent. *Peters v. Active Mfg. Co.,* 129 U.S. 530, 537 (1889) ("That which infringes, if later, would anticipate if earlier."). Thus, if the asserted claims of the '452 patent are interpreted to cover

Stryker's product, those claims are invalid under 35 U.S.C. §102(a) and/or (g). The Federal Circuit has repeatedly upheld district court findings of invalidity under §102(a) on summary judgment. *Giora George Angres, Ltd. v. Tinny Beauty & Figure*, 1997 U.S. App. LEXIS 15342 (Fed. Cir. June 26, 1997); *Golden Star, Inc. v. Wilen Cos.*, 1995 U.S. App. LEXIS 36136; 37 U.S.P.Q.2d 1894 (Fed. Cir. December 19, 1995); *Ohio Cellular Prods. Corp. v. Adams USA*, 1996 U.S. App. LEXIS 33550 (Fed. Cir. December 23, 1996). Likewise, the Federal Circuit also regularly affirms district court findings of anticipation under §102(g). *Dow Chemical Co. v. Astro-Valcour, Inc.*, 267 F.3d 1334 (Fed. Cir. 2001); *Apotex USA, Inc. v. Merck & Co., Inc.*, 254 F.3d 1031 (Fed.Cir. 2001).

35 U.S.C. §102(a) specifies that the subject matter of the '452 patent cannot be "known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent." 35 U.S.C. §102(a). 35 U.S.C. §102(g) states that no patent should issue where "before the applicant's invention thereof, the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it." 35 U.S.C. § 102(g). Since the filing date of a patent is presumptively the date of invention, the relevant invention date for the '452 patent is presumptively its filing date of June 18, 1996. *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1576 (Fed. Cir. 1996).

The '452 patent is invalid under §102(a) because the subject matter of the '452 patent was "known or used by" Stryker at least as early as April 7, 1995, the date on which Stryker submitted its 510(k) Premarket Notification to the United States Food and Drug Administration. (Exhibit F).[11] To the extent the asserted claims are interpreted to cover the accused InterPulse

[11] The Figure included at the end of the Noonan declaration (Ex. E) is also part of the April 1995 FDA submission, but was not included as part of Ex. F to avoid duplication. Due to the Court's Amended General Order #2002-01, limiting the number of exhibit pages, Stryker has only (Cont.)

product, then each element of those claims was disclosed in the April 1995 FDA submission. In particular, the FDA submission described the InterPulse product as having "suction capability ...[and] suction tubing along the spine of the handpiece." (Ex. F pg. 4 and Ex. E, Noonan Decl., ¶11). Therefore, the FDA submission disclosed the InterPulse as a reusable device. While the InterPulse was referred to in the FDA documents as a single patient use device, the InterPulse anticipates the disclosure of the '452 patent because the structure of the device itself has not changed. The suction tubing on the spine of the handpiece permits the InterPulse handpiece to be reused for the same patient. *In re Schreiber*, 128 F.3d 1473, 1477 (Fed. Cir. 1997) ("It is well settled that the recitation of a new intended use for an old product does not make a claim to that old product patentable."); *See In re Spada*, 911 F.2d 705, 708 (Fed. Cir. 1990) ("The discovery of a new property or use of a previously known composition, even when that property and use are unobvious from prior art, can not impart patentability to claims to the known composition.").

Dylan Crotty, a product manager at Stryker, provided deposition testimony explaining that Stryker's customers have always been able to and have used the InterPulse in a manner which was reuseable by replacing the suction tubing with their own suction tubing and purchasing new tips from Stryker. (Ex. G, Crotty Dep. August 27, 2003, 17:6-17) ("[T]he customer could always reuse the handpiece, and the customer was reusing the handpiece. Just we weren't helping them do it. We weren't technically allowed to by the F.D.A...We had customers that, even thought the F.D.A. didn't approve it, were reusing our handpieces, because they knew that if they removed the infected portion, which is the suction tube and the tip, that they could reuse it. So they were ordering tips of ours using their own suction tubing and reusing our handpieces.")

---

attached cited pages from the April 1995 FDA submission. Upon the Court's request, Stryker (Cont.)

Similarly, claims 9, 10, 20-21, 23-24, 26, 28, and 30 are invalid under 35 U.S.C. §102(g). Under 35 U.S.C. §102(g), a prior art device can anticipate a patent if it was conceived and reduced to practice prior to the filing date of the patent. *Sandt Tech. v. Resco Metal and Plastics Corp.*, 264 F.3d 1344, 1350 (Fed. Cir. 2001) (affirming the district court's ruling of summary judgment of invalidity under 102(g)). If the asserted claims of the '452 patent are interpreted to cover Stryker's InterPulse product, the '452 patent is also invalid under §102(g) because the InterPulse was made before the invention date of the '452 patent. *Dow,* 267 F.3d at 1339 (explaining that if defendant's accused product infringement the patent-in-suit, it would anticipate in fact the relevant claims of the patent-in-suit because the accused product was made before the patentee's invention.) In this case, InterPulse was conceived and reduced to practice well before the invention date of the '452 patent and the InterPulse was clearly not "abandoned, suppressed, or concealed" because it was disclosed to the FDA for the purpose of obtaining regulatory approval to market and sell the InterPulse. (Exhibit F). Indeed, such approval was obtained and Stryker launched the product shortly thereafter.

## IV. CONCLUSION

Since the present issues revolve around claim construction, a question of law, no genuine issues of fact remain. Summary judgment of either noninfringement or invalidity is appropriate.

Respectfully submitted,

Dated: June 23, 2005

Joseph Avanzato /MJG

Joseph Avanzato (#4774)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345

---

can provide the entire FDA submission for the Court's review.

(401) 274-7200

Gregory J. Vogler (admitted *pro hac vice*)
Sharon A. Hwang (admitted *pro hac vice*)
McANDREWS, HELD & MALLOY, LTD.
500 West Madison Street
Chicago, Illinois 60661
(312) 775-8000

Of Counsel:

Curtis E. Hall
Aaron R. Pettit
STRYKER CORPORATION
2725 Fairfield Road
Kalamazoo, Michigan 49002
(616) 385-2600

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing **STRYKER CORPORATION'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT OR, IN THE ALTERNATIVE, INVALIDITY OF THE '452 PATENT, MEMORANDUM IN SUPPORT THEREOF, STATEMENT OF UNDISPUTED FACTS AND EXHIBITS A-G** was served by placing true and correct copies thereof:

| | |
|---|---|
| **Via Hand Delivery** | Mark A. Pogue<br>EDWARD & ANGELL, LLP<br>2800 Financial Plaza<br>Providence, RI 02903<br>401/274-9200 |
| **Via FEDERAL EXPRESS** | Claire Laporte<br>Mitchell J. Matorin<br>FOLEY HOAG, LLP<br>155 Seaport Boulevard<br>Boston, MA 02210-2600<br>617/832-1000 |

this 24th day of June, 2005.

Valaree Laratte

'452 patent shows how the '452 patent discloses channeling aspirated irrigation fluid externally of the handpiece and directly to a suction source.

The Abstract of the '452 patent further expresses that "[s]uction is provided through a suction tube which has a bypass conduit in the tip. The bypass conduit is directly connectable to a suction source so that aspirated debris passes through the tip to the suction source. The suction tube thus prevents aspirated debris from entering the conventional suction tube in the handpiece and contaminating the handpiece." (*Id.* Abstract, p.1; Ex. A Abstract, p.1).



FIG. 7

Indeed, the detailed descriptions sections of the '452 patent emphasizes that the handpiece suction tube is never used. (Ex. B., 4:3-7) ("[t]he suction tube 46 provides a direct pathway 50 for suction from the tip distal end 32 to a suction source. . . <u>Aspirated debris therefore never enters the handpiece 10.</u>") (emphasis added); (*Id.*, 6:46-52) ("[w]hen in use, the tip 16 is connected to the handpiece 10 and the flexible suction tubing 20 is connected to the tapered lower end 62 of the elbow shaped conduit 60. <u>The handpiece suction tube 22 remains unused</u>.") (emphasis added).

The express language throughout the '452 patent clearly and unequivocally states that the <u>tip</u> is provided with a suction tube having a fluid path that channels aspirated irrigation fluid externally of the handpiece and directly to a suction source. (*Id.*, 3:31-34) ("when the <u>inventive tip</u> 16 is connected to the handpiece 10, a suction bypass is provided that diverts aspirated debris away from the interior of the handpiece 10, thus reducing the risk of contaminating the handpiece 10."). Indeed, the plain language of claims 9 and 30 dictates that it is the "tip," not the

handpiece, which "comprise[s]" the "suction tube having a fluid path that channels aspirated irrigation fluid externally of the handpiece and directly to a suction source." (Ex. A. 1:56, 64-66; 2:50-51, 60-63).

Therefore, the actual language of Claims 9 and 30, as confirmed by the '452 patent specification, limits the scope of the claim terms "tip comprising" a "suction tube having a fluid path that channels aspirated irrigation fluid externally of the handpiece and directly to a suction source" by requiring that the tip prevent the aspirated fluid from entering the handpiece suction tube. *See e.g. C.R. Bard, Inc,* 388 F.3d at 865-66 (the specification required the claim term "plug" be a pleated plug); *Boss Control,* 2005 U.S. App. 10543 at *7-15 (the specification limited the claim term "interrupt" to a more detailed definition than simple on-off control); *Astrazeneca,*384 F.3d at 1339 (the specification limited the scope of the claim term "solubilizer" to surfactants); *Alza,* 391 F.3d at 1370 (the specification and file history required "skin permeable form" to exclude fentanyl citrate); *See also supra* Footnote 3.

The original prosecution history of the '452 patent also expressly clarifies the scope of the claims, including claim 9. In a November 2, 2000 Preliminary Amendment filed concurrently with the patent application, Bard argued that, for **all claims**:

> the invention provides an arrangement by which the flow path of aspirated material is diverted away from and bypasses the handpiece. To that end, the detachable **tip** 16 has a suction tube 46 with a conduit 60 that defines a **fluid bypass path that prevents aspirated material from being channeled into contact with the handpiece 10 and its suction lumen 22 (see all claims).** The handpiece thus does not become contaminated and may be used again, thereby reducing the cost of treatment.

(Ex. C, p. 5)[4] (emphasis added; parenthetical in original). The Bard admission that "all claims" require a fluid bypass around the suction tube of the handpiece was repeated verbatim in a later Amendment filed on July 12, 2002. (Ex. D, p. 3). *See C.R. Bard, Inc.*, 388 F.3d at 864 ("Statements that describe the invention as a whole, rather than statements that describe only preferred embodiments, are more likely to support a limiting definition of a claim term.") In both instances, Bard's argument as to the meaning of "all claims" was made in an attempt to overcome cited prior art. In light of Bard's admissions to the Patent Office, all of the '452 patent claims must be construed as providing a flow path that diverts aspirated debris away from the handpiece and prevents the aspirated materials from being channeled into contact with the handpiece suction tube.[5]

**2. Tip for "Directing the Aspirated Irrigation Fluid Along a Path that is Disposed Exteriorly of the Handpiece" of Claim 10**

Independent claim 10[6] requires the steps of "**connecting a detachable tip to the handpiece** . . . **aspirating spent irrigation fluid from the irrigation site through the suction tube of the tip and directing the aspirated irrigation fluid along a path that is disposed exteriorly of the handpiece.**" (Ex. B, 8:26-49) (emphasis added); Stmt. of Undisputed Facts ¶9.

The claim language "directing the aspirated irrigation fluid along a path that is disposed exteriorly of the handpiece" must be interpreted to mean that the tip suction tube **directs the**

---

[4] Due to the Court's Amended General Order #2002-01, limiting the number of exhibit pages, Stryker has only attached cited pages from the '452 patent's prosecution history. (See also Exhibit D). Upon the Court's request, Stryker can provide the entire prosecution history for the Court's review.

[5] Even though Claim 30 was added as part of the reexamination of the '452 patent, Davol's original description of its invention to the Patent Office as requiring a fluid bypass around the suction tube of the handpiece still applies to claims added during reexamination.

[6] Claim 10 is a method claim relating to a method for irrigating and aspirating a site. Nevertheless, the claim requires using a specially-designed tip such that the claim analysis is similar to the apparatus and tip of claims 9 and 30.

**aspirated fluid along a separate path outside of the handpiece suction tube**. The passages from the specification and the file history of the '452 patent cited above with respect to claims 9 and 30 support this definition.[7]

Stryker InterPulse




### B. The Stryker InterPulse Does Not Literally Infringe

The accused InterPulse system is dramatically different than the claimed invention of the '452 patent. Unlike the '452 patent, it uses a conventional tip[8] (e.g., one without a suction tube that channels aspirated irrigation fluid externally of the handpiece). Unlike the '452 patent, the InterPulse's tip does not have a special suction tube which bypasses the handpiece suction tubing.

The InterPulse system includes a suction irrigator for providing irrigation fluid to a surgical site to loosen and float debris for subsequent removal by suction. (Ex. E, Noonan Decl., ¶2). The InterPulse includes a patented pistol grip style handpiece and conventional, detachable

[7] As discussed *infra*, the term "directing the aspirated irrigation fluid along a path that is disposed exteriorly of the handpiece" characterizes the function of the tip suction tube and cannot be interpreted so broadly as to cover handpiece suction tubing without running afoul of 35 U.S.C. §102. The stated purpose of the '452 patent is to provide a bypass fluid path in a specially designed tip to permit reuse of a conventional handpiece having irrigation and suction tubes. There is no teaching to permit reuse of a conventional handpiece by reconfiguring or replacing the handpiece tubing. Since claims must be interpreted to maintain validity, claim 10 cannot properly be interpreted to encompass directing aspirated irrigation fluid through the handpiece suction tubing. *Athletic Alternative, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1581 (Fed. Cir. 1996).

[8] Even though Davol alleges that various InterPulse tips are at issue, this motion refers to "tip" generally as to address all of Stryker's InterPulse tips and their bases for noninfringement. Bard admitted that Stryker's InterPulse tips are essentially identical for purposes of an (Cont.)

tips. (*Id.*, ¶2). The handpiece includes an irrigation tube to connect with irrigation bags and a trigger to control flow of irrigation fluid. (*Id.*, ¶3). The handpiece also includes suction tubing along its spine for connection to a suction source. (*Id.*, ¶4).

Stryker's InterPulse system permits handpiece reuse without plugging, bypassing, or otherwise avoiding the handpiece suction tubing. (*Id.*, ¶9). InterPulse customers are offered Wound Care Tubing Replacement Sets, sold under the product codes REF 210-312 and 210-318. (*Id.*, ¶5). The Wound Care Tubing Replacement Sets permit customers to replace the used suction irrigation tip and the entire suction tubing of the InterPulse so that the handpiece can be used multiple times. (*Id.*, ¶¶5-7). The InterPulse suction tubing is located along the spine of the handpiece, and can be removed and replaced with the conventional, disposable tips. (*Id.*, ¶4).

The InterPulse uses an old, conventional tip design that was known in the prior art years before the '452 patent. As illustrative examples, an exemplary Stryker tip is compared below to admitted prior art[9] and the tip of the '452 patent. Only the '452 patent's tip has a suction tube that channels irrigation fluid externally of the handpiece (Claims 9 and 30) or directs the irrigation fluid exteriorly of the handpiece (Claim 10). This suction tube provided in the tip is highlighted in blue.

---

infringement/noninfringement analysis. (Plaintiff's Second Supplemental Answers to Stryker's First Set of Interrogatories, May 6, 2005).

[9] Bard identified U.S. Patent No. 4,692,140 and its tip as prior art. (Ex. B, 1:32-42).



Stryker's
Accused Tip



4,692,140
Prior Art Tip




6,485,452 B1
Patent Tip

### 1. Claims 9 and 30

The InterPulse cannot literally infringe claims 9 and 30 because Stryker's tips do not have a "suction tube having a fluid path that channels aspirated irrigation fluid externally of the handpiece and directly to a suction source." Rather, the aspirated irrigation fluid flows through the suction tube of the InterPulse tip to the handpiece suction tube that, in turn, is connected to a suction source. The flow of aspirated irrigation liquid through the InterPulse handpiece suction tube is precisely what the '452 patent expressly seeks to avoid. (Ex. B 2:13-15; 2:55-56; 4:3-8; 6:48-49). While the InterPulse <u>handpiece</u> suction tube can be located on the exterior portion of the housing,[10] the claim language requires that **<u>the tip itself</u>** <u>include a fluid path external</u> of, *i.e.*, bypassing, the normal suction tube of the handpiece so as to be directly connected to a suction source. (Ex. A, 1:56, 64-66; 2:50, 60-62). Stryker's **<u>tips</u>** are not equipped with a suction tube

[10] The InterPulse handpiece suction tubing may be detached from the handpiece and clipped instead to the handpiece irrigation tubing. (Ex. E, Noonan Decl., ¶8). Regardless of whether the InterPulse handpiece suction tubing is attached to the handpiece or clipped to the handpiece irrigation tubing at the base of the handpiece, <u>no InterPulse tip</u> includes a bypass path directly connected to a suction source to circumvent the handpiece suction tubing. (Ex. E, Noonan Decl. ¶9).

having a fluid path that diverts aspirated irrigation fluid outside of the handpiece suction tube and directly to a suction source. No literal infringement exists.

2. **Claim 10**

The InterPulse cannot literally infringe claim 10 of the '452 patent. The method of irrigating and aspirating irrigation liquid from a surgical site using the InterPulse system does not involve aspirating irrigation fluid from the irrigation site through the tip suction tube and "directing the aspirated irrigation fluid along a path that is disposed exteriorly of the handpiece." As discussed above, aspirated irrigation fluid travels through the InterPulse tip suction tube to the InterPulse handpiece suction tubing, and thereafter to the suction source. The aspirated irrigation fluid is not directed along a path in the tip "disposed exteriorly of the handpiece" as required under a proper interpretation of claim 10.

C. **Prosecution History Estoppel Precludes Infringement Under Doctrine Of Equivalents**

The InterPulse does not infringe claims 9, 10, or 30 of the '452 patent under the doctrine of equivalents. Under the doctrine of equivalents, a product cannot infringe unless the differences between the elements of the accused product and the claim limitations are insubstantial. *Schoell v. Regal Marine Indus.*, 247 F.3d 1202, 1209 (Fed. Cir. 2001). The classic test for whether differences are insubstantial is to determine if the element performs substantially the same function in substantially the same way to obtain substantially the same result as the claim limitation. *Dawn Equip. Co. v. Kentucky Farms,* 140 F.3d 1009, 1016 (Fed. Cir. 1998).

1. **Claims 9 and 30**

The InterPulse system does not infringe claim 9 or 30 under the doctrine of equivalents because a tip suction tube that is first connected to a handpiece suction tube and, in turn, connected to a suction source is not equivalent to a tip suction tube "having a fluid path that