IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| C.R. BARD, Inc., and DAVOL, INC., Plaintiffs, | ) |
| v. | ) Civil Action No. 02-515ML |
| | ) Judge Mary M. Lisi |
| STRYKER CORPORATION, Defendant. | ) |

**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANT STRYKER CORPORATION'S RENEWED MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT OR, IN THE ALTERNATIVE, INVALIDITY OF THE '452 PATENT**

Pursuant to R.I. L.R. 12.1(a)(1), Defendant Stryker Corporation ("Stryker") submits the following statement of undisputed material facts:

**Jurisdiction**

1. This Court has jurisdiction pursuant to 28 U.S.C. §§1331, 1338(a), 2201(a) and 2202. (Complaint, ¶4).

**The Parties**

2. Defendant Stryker Corporation is a Michigan corporation having a principal place of business in Kalamazoo, Michigan. Stryker develops, manufactures, and markets specialty surgical and medical products. (Answer, ¶3).

3. Plaintiff C.R. Bard, Inc. ("Bard") is a New Jersey corporation with its principal place of business in Murray Hill, New Jersey. Bard is the alleged assignee of the patent-in-suit, U.S. Patent No. 6,485,452 ("the '452 patent"). (Complaint, ¶¶1, 6).

4. Plaintiff Davol, Inc. ("Davol") is a Delaware corporation having its principal place of business in Cranston, Rhode Island. Davol is a wholly-owned subsidiary of Bard, and also engages in the manufacture and sale of medical products, including a line of surgical irrigation equipment. (Complaint, ¶2).

**The '452 Patent**

5. The '452 patent was filed on November 2, 2000 and issued on November 26, 2002. The '452 patent is a continuation of Application No. 08/665,467 (now U.S. Patent No. 6,200,292), which was filed on June 18, 1996. (Ex. B, '452 patent).

6. The '452 patent was submitted for reexamination on November 7, 2003 and was issued after reexamination on May 10, 2005 (Ex. A, '452 Reexamination Certificate).

7. The '452 patent relates to a suction irrigation handpiece and a specially-designed suction irrigation tip:

- The Abstract of the '452 patent states that "suction is provided through a suction tube which has a bypass conduit in the tip. The bypass conduit is directly connectable to a suction source so that aspirated debris passes through the tip to the suction source. The suction tube thus prevents aspirated debris from entering the conventional suction tube in the handpiece and contaminating the handpiece." (Ex. A and B, Abstract).
- The '452 patent states that "[I]n accordance with one aspect of the invention, the suction lumen in a detachable suction and irrigation tip is configured so that aspirated fluid and debris are passed directly to an external suction source when the tip is used with a conventional handpiece having both suction and irrigation

lumens. No portion of the suction lumen in the tip is in fluid communication with the suction lumen in the handpiece." (Ex. B, '452 patent, 2:17-24).

- The '452 patent states that "when the inventive tip 16 is connected to the handpiece 10, a suction bypass is provided that diverts aspirated debris away from the interior of the handpiece 10, thus reducing the risk of contaminating the handpiece 10." (Ex. B, '452 patent, 3:31-35).
- The '452 patent states that "[w]hen in use, the tip 16 is connected to the handpiece 10 and the flexible suction tubing 20 is connected to the tapered lower end 62 of the elbow shaped conduit 60. The handpiece suction tube 22 remains unused. Since the tip 16 is connected to the handpiece 10, the tip plug 34 sealingly connects to the handpiece suction port 28 and the irrigation connector 68 connects to the handpiece irrigation port 30." (Ex. B, '452 patent, 6:46-52).

8. Davol asserts that the following claims of the '452 patent are in dispute in this case: 9, 10, 20-21, 23-24, 26, 28, and 30. (Davol's Second Supplemental Answers to Stryker's First Set of Interrogatories May 6, 2005).

9. Independent claim 9 and dependent claims 20, 21, 23, 26, and 28 and independent claim 30 require, among other things, a tip comprising "a suction tube for aspirating irrigation fluid from the irrigation site, the suction tube having a fluid path that channels aspirated irrigation fluid externally of the handpiece and directly to a suction source." (Ex. A, 1:51-2:8; 2:42-65).

Independent claim 9 states in pertinent part:

> A detachable discardable suction and irrigation tip for use with an irrigation apparatus that comprises a pump to pump irrigation fluid and a handpiece, the handpiece having an irrigation lumen extending therethrough, a trigger for controlling the flow of irrigation fluid and a connector for connection to the discardable tip, **<u>the tip comprising</u>**:

* * *

a suction tube for aspirating irrigation fluid from the irrigation site, **the suction tube having a fluid path that channels aspirated irrigation fluid externally of the handpiece and directly to a suction source**, the suction tube and irrigation tube being detachable together from the handpiece **whereby the tip can be discarded, enabling the handpiece to be reused**.

(Ex. A, 1:50-2:2) (emphasis added).

Independent claim 30 states in pertinent part:

A detachable discardable suction and irrigation tip for use with an apparatus for irrigating an irrigation site . . . the tip comprising:

* * *

A suction tube for aspirating irrigation fluid from the irrigation site, **the suction tube having a fluid path that channels aspirated irrigation fluid externally of the handpiece and directly to a suction source**, the suction tube and irrigation tube being detachable together from the handpiece **whereby the tip can be discarded, enabling the handpiece to be reused**.

(Ex. A,2:42-65) (emphasis added).

10. Independent claim 10 and dependent claim 24 require, among other things, a method of irrigating an irrigation site and aspirating an irrigation liquid from the aspiration site, including providing a tip for "aspirating spent irrigation fluid from the irrigation site through the suction tube of the tip and directing the aspirated irrigation fluid along a path that is disposed exteriorly of the handpiece." (Ex. B, 8:42-43; 10:21).

Independent claim 10[1] states in pertinent part:

A method of irrigating an irrigation site and aspirating the irrigation liquid from the aspiration site comprising:

* * *

**connecting a detachable tip to the handpiece** at the connector, the tip comprising an irrigation tube for directing irrigation fluid from the handle to the irrigation site and a suction tube for aspirating irrigation fluid from the irrigation site;

* * *

[1] Claim 10 is a method claim relating to a method for irrigating and aspirating a site. Nevertheless, the claim requires using a specially-designed tip such that the claim analysis is similar to the apparatus and tip of claims 9 and 30.

**aspirating spent irrigation fluid from the irrigation site through the suction tube of the tip and directing the aspirated irrigation fluid along a path that is disposed exteriorly of the handpiece**;

thereafter detaching the tip, including the irrigation tube and suction tube together from the handpiece and discarding them;

attaching an unused discardable suction and irrigation tip to the handpiece in readiness for another procedure.

(Ex. B, 8:26-49) (emphasis added).

**The '452 Prosecution History**

11. The '452 file history states that, "the invention provides an arrangement by which the flow path of aspirated material is diverted away from and bypasses the handpiece. To that end, the detachable tip 16 has a suction tube 46 with a conduit 60 that defines a fluid bypass path that prevents aspirated material from being channeled into contact with the handpiece 10 and its suction lumen 22 (see all claims). The handpiece thus does not become contaminated and may be used again, thereby reducing the cost of treatment." (Ex. C, 11/2/00 Preliminary Amendment, p. 5).

12. In an Amendment dated July 12, 2002, Bard characterized the claimed invention as "provid[ing] an arrangement by which the flow path of aspirated material is diverted away from and bypasses the handpiece. To that end, the detachable tip 16 has a suction tube 46 with a conduit 60 that defines a fluid bypass path that prevents aspirated material from being channeled into contact with the handpiece 10 and its suction lumen 22 (see all claims). The handpiece thus does not become contaminated and may be used again, thereby reducing the cost of treatment." (Ex. D, 7/12/02 Amendment, p. 3).

**The Accused InterPulse Product**

13. The accused InterPulse product is a suction irrigator for providing irrigation to a surgical site to loosen and float debris for subsequent removal by suction. (Ex. E, Declaration of Mickey Noonan, ¶2). The InterPulse includes a pistol grip style handpiece and detachable tips. The handpiece includes an irrigation tube to connect with a source of irrigation fluid. The flow of irrigation fluid is controlled by a handpiece trigger. (*Id.*, ¶3). The handpiece also includes suction tubing along the spine of the handpiece for connection to an external suction source. (*Id.* at ¶4).

14. Stryker's InterPulse system permits handpiece reuse without plugging or bypassing the handpiece suction tubing. (*Id.* at ¶9). The InterPulse suction lumen is located along the spine of the handpiece, and can be removed and replaced along with the disposable tips. (*Id.* at ¶5-8).

15. InterPulse customers are offered Wound Care Tubing Replacement Sets with REF 210-312 and 210-318. (*Id.* at ¶¶5). The Wound Care Tubing Replacement Sets permits customers to replace the used irrigation tip and handpiece suction tubing of the InterPulse handpieces so that the handpiece can be used multiple times to clean the wounds of a single patient without the risk of cross-contamination. (*Id.* at ¶¶ 5-8).

16. The InterPulse tip is not sold with a plug for sealing off the suction tubing of the handpiece to prevent aspirated fluid to enter the suction lumen of the handpiece. (Ex. E, Noonan Decl., ¶9). As such, the InterPulse cannot infringe claims 1-6, or 8, each of which require a plug.

17. The InterPulse is not sold with a protective member to prevent the handpiece from becoming contaminated. (*Id.*, ¶10). As such, the Interpulse cannot infringe claims 11-14,

each of which require a protective member to prevent the handpiece from becoming contaminated.

18. The InterPulse is not sold with a flexible protective covering to shield the handpiece from irrigation fluid or biological debris. (*Id.*). As such, the InterPulse cannot infringe claims 15-18, each of which require a flexible protective covering.

19. A 510K Premarket Notification for the InterPulse system was filed with the U.S. Food and Drug Administration on April 7, 1995. (Ex. E, Noonan Decl., ¶11 and Ex. F). The InterPulse system described in the 510K Premarket Notification had the structural features and capabilities of the InterPulse product accused in this lawsuit. (*Id.*). In the 1995 FDA submission, Stryker showed and described the InterPulse product as having "suction capability . . . [and] suction tubing along the spine of the handpiece". (*Id.*). Thus, the InterPulse system design was completed and existed well before the filing date of June 18, 1996 for the '452 patent-in-suit. (*Id.*).

Respectfully submitted,

Dated: June 23, 2005

Joseph Avanzato /MG

Joseph Avanzato (#4774)
ADLER POLLOCK & SHEEHAN P.C.
2300 Financial Plaza
Providence, RI 02903
(401) 274-7200

Gregory J. Vogler (admitted *pro hac vice*)
Sharon A. Hwang (admitted *pro hac vice*)
McANDREWS, HELD & MALLOY, LTD.
500 West Madison Street
Chicago, Illinois 60661
(312) 775-8000

Of Counsel:

Curtis E. Hall
Aaron R. Pettit
STRYKER CORPORATION
2725 Fairfield Road
Kalamazoo, Michigan 49002
(616) 385-2600