IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| C.R. BARD, Inc., and DAVOL, INC., Plaintiffs, | ) |
| v. | ) Civil Action No. 02-515ML |
| | ) Judge Mary M. Lisi |
| STRYKER CORPORATION, Defendant. | ) |

**DEFENDANT STRYKER CORPORATION'S OPPOSITION TO BARD'S CROSS MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT OF THE '452 PATENT**

Joseph Avanzato (#4774)
ADLER POLLOCK & SHEEHAN P.C.
2300 Financial Plaza
Providence, RI 02903
(401) 274-7200

Gregory J. Vogler (admitted *pro hac vice*)
Sharon A. Hwang (admitted *pro hac vice*)
McANDREWS, HELD & MALLOY, LTD.
500 West Madison Street
Chicago, Illinois 60661
(312) 775-8000

Of Counsel:

Curtis E. Hall
Aaron R. Pettit
STRYKER CORPORATION
2725 Fairfield Road
Kalamazoo, Michigan 49002
(616) 385-2600

Bard's Cross-Motion for Summary Judgment of Infringement should be denied. It is hornbook patent law that a claim cannot be infringed unless the accused product includes every element of the asserted claim. *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1539 (Fed. Cir. 1991). Stryker's Motion for Summary Judgment of Noninfringement, over which both parties agree there is no genuine issue of material fact, addresses one claim element of each asserted claim that is not found in Stryker's accused product. The omission of one claim element is enough to support a summary judgment of noninfringement. If Stryker's motion is granted, then Bard's Cross-Motion is moot.

In addition to the claim element addressed in Stryker's motion, the accused InterPulse products are missing several other elements of the asserted claims. In response to Bard's cross-motion, Dr. Barry Feinberg has filed a declaration setting forth reasons for noninfringement and establishing genuine issues of material fact. These additional factual reasons for noninfringement raise genuine issues of material fact as to Bard's cross-motion. Bard's Cross-Motion for Summary Judgment of Infringement is therefore unsupportable and improper.

The claims of U.S. Patent No. 6,485,452 and its associated Reexamination Certificate (referred to collectively as "the '452 patent") are akin to a deed of property. They serve, first and foremost, a public notice function of what is permissible and what is not under the patent laws. In exchange for a limited patent monopoly, Bard, as the patentee, was required by statute to set forth "one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112, ¶ 6. The public and competitors such as Stryker have a right to rely on the text and on each limitation of the claims.

Here, Bard has described and claimed a particular specially-designed tip having particular features, such as a bypass conduit to prevent aspirated fluid from contaminating a conventional

suction irrigation handpiece to enable the handpiece to be reused. Bard made affirmative representations regarding the scope of its claims before the Patent Office. Bard now seeks to renege on its statements to the Patent Office and eliminate several key elements from its asserted claims (those missing in Stryker's products) in order to cover Stryker's accused InterPulse system. The law does not allow Bard to act in such fashion.

## I. The InterPulse System Does Not Include Each and Every Element of the Asserted Claims

The determination of infringement or noninfringement is a question of fact. *General Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 981 (Fed. Cir. 1997). Summary judgment is not proper if a genuine issue of material fact exists for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Both parties agree that there are no genuine issues of material fact as to Stryker's motion for summary of noninfringement. Thus, Stryker's motion can be determined as a matter of law. The same is not true with respect to Bard's cross-motion for summary judgment of infringement.

Bard bears the burden of proving that no material issues of fact exist as to its cross-motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When considering Bard's cross-motion, the Court must view the evidence in the light most favorable to Stryker. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "[A]ll justifiable inferences are to be drawn in [Stryker's] favor." *Id.* "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Id.*

"[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254.

To prove infringement of an asserted claim, Bard must show, by a preponderance of the evidence, "the presence of every [claim] element or its substantial equivalent in the accused device." *Zygo Corp. v. Wyco Corp.*, 79 F.3d 1563, 1568 (Fed. Cir. 1996); *see also Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1259 (Fed. Cir. 1989). The absence of even one claim element precludes a finding of infringement. *See, e.g., ADT Corp. v. Lydall, Inc.*, 159 F.3d 534, 543 (Fed. Cir. 1998) (affirming summary judgment of noninfringement where a claim limitation was absent in the accused product); *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 532 (Fed. Cir. 1996) (affirming summary judgment of non-infringement when "accused products do not literally meet all of the claim limitations").

The first step of an infringement analysis, claim construction, is a matter of law exclusively within the province of the court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). In determining the meaning of the asserted claims, this Court should focus at the outset on how the patentee used the claim terms in the claims, specification, and prosecution. *Phillips v. AWH Corp.*, 2005 U.S. App. LEXIS 13954 (Fed. Cir. July 12, 2005). In the recent *Phillips* case, the *en banc* Federal Circuit reiterated the primacy of the patent specification as providing the appropriate context for claim terms. Citing 35 U.S.C. §112, the Federal Circuit noted that, "in light of the statutory directive that the inventor provide a 'full' and 'exact' description of the claimed invention, the specification necessarily informs the proper construction of the claims." *Id.* at *32-33. The Federal Circuit adopted the philosophy that claim interpretation can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop within the claim, as described in the patent specification. *Id.* at *33, citing *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). The Federal Circuit noted that "[t]he patent system is based on the

proposition that claims cover only the invented subject matter." *Id.* at *49. Here, Bard is attempting to eliminate the very claim elements that rendered their special tip design patentable in the first place, in contradiction to the specification and prosecution history of the '452 patent.

The second step of an infringement analysis, determining whether the properly construed claims encompass the accused structure, is a question of fact. *General Mills*, 103 F.3d at 981. In the present case, summary judgment of infringement is clearly inappropriate because the accused InterPulse does not include each and every claim element of the asserted claims, as properly construed. Summary judgment is not proper where a question of fact remains. *See, e.g., Warner-Lambert Co. v. Teva Pharmaceuticals USA, Inc.*, 2005 U.S. App. LEXIS 16880 *40-41 (Fed. Cir. 2005) (reversing summary judgment of infringement because genuine issues of material fact existed); *see also Abbott Labs. v. Torpharm, Inc.*, 300 F.3d 1367, 1377 (Fed. Cir. 2002); *CFM Corp. v. Dimplex North America Ltd.*, 02 C 1981, 2005 U.S. Dist. LEXIS 5562 (N.D. Ill. Feb. 8, 2005); *Scanner Tech. Corp. v. ICOS Vision Sys. Corp.*, 00 Civ. 4992 (DC), 2003 U.S. Dist. LEXIS 7048 at *5 (S.D.N.Y. Apr. 22, 2003).

**A. Stryker Does Not Infringe Independent Claims 9 and 30**

On its own motion and in a rare occurrence for a plaintiff during litigation, Bard requested reexamination of its own '452 patent before the Patent Office. During reexamination, the Patent Office determined that several of the claims of the '452 patent were invalid over the prior art. Bard was forced to amend several claims, including claim 9. Bard also added new claim 30, which mirrors reexamined claim 9 in many respects. For ease of reference and because the noninfringement analysis is the same for claims 9 and 30, those claims will be treated together. In addition, since independent claims 9 and 30 are not infringed, dependent claims 20,

21, 23, 26, and 28 are not infringed. *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 (Fed. Cir. 1989).

### 1. "A tip comprising. . . .a connector"

Claims 9 and 30 each require a "tip comprising. . . .a connector for detachably connecting the irrigation tube to the handpiece to provide fluid communication between the irrigation lumen of the handpiece and the irrigation tube." Summary judgment of infringement is improper because the accused InterPulse does not include a tip comprising the claimed connector. Bard has not supplied any analysis on this claim element other than a conclusory claim chart that simply assumes that the accused InterPulse includes the claimed connector. It does not.

As an initial matter, the claimed "connector" should be interpreted to mean a tip structure that is separate from the suction and irrigation tubes of the tip that causes connection between the tip and the handpiece, and provides fluid communication therebetween. (Feinberg Decl.¶5-8). The intrinsic evidence supports such an interpretation.

The starting point for claim construction is to look at the claim language itself. *Phillips*, 2005 U.S. App. LEXIS 13954 at *27. The claim language itself specifies a "tip comprising. . . .a connector for detachably connecting the irrigation tube to the handpiece." The tip "irrigation tube" is earlier defined as "an irrigation tube for directing irrigation fluid from the handpiece to the irrigation site." (Ex. A, Reexam Certificate, 1:57-58). The claim language also requires that the connector provide for "fluid communication" between the handpiece irrigation lumen and the tip irrigation tube. Thus, the plain language supports an interpretation of the "connector" as something different <u>and</u> separate from the irrigation tube itself, such as an intermediate structure or housing that serves to (1) "detachably connect" the irrigation tube of the tip to the irrigation

lumen of the handpiece, and (2) provide fluid communication between the handpiece irrigation lumen and the tip irrigation tube.




Similarly, the specification describes the connector as "connector 56" located at the tip proximal end, and as removably connecting the tip 16 to the handpiece. (Ex. B, '452 patent, 4:11-12). The "connector" is also described as having an irrigation fluid chamber 66 that receives fluid from the handpiece irrigation port 30 through an irrigation connector 68. (*Id.*, 4:36-38). This is consistent with an interpretation of the claimed connector as being a structure in the tip that is separate from the suction and irrigation tubes of the tip, that connects the tip and the handpiece.

The prosecution history is in accord. In a Preliminary Amendment, the applicant explained that "[t]he proximal end of the detachable tip 16 is configured to detachably mate with the handpiece by engagement of a connector 56 at the proximal end of the tip with a fitting 26 of the handpiece. . . .The connector 56 also has an irrigation fluid chamber 66 that receives fluid from the handpiece irrigation port 30 through an irrigation connector 68." (Ex. C, Preliminary Amendment, p. 5). The same argument was made in a later Amendment. (Ex. D, Amendment, pp. 3-4). In other words, the applicant <u>expressly noted that the connector 56</u> is the structure that (1) "detachably connects" the irrigation tube of the tip to the irrigation lumen of the handpiece, and (2) provides fluid communication through an irrigation fluid chamber between the handpiece irrigation lumen and the tip irrigation tube. The connector 56 is a tip structure that is separate from the irrigation tube of the tip.



As can be seen in the photograph to the right, the InterPulse conventional tip does not include any connector. There is no independent structure to "detachably connect" the tip irrigation tube to the handpiece and no irrigation fluid chamber or other independent structure to provide fluid communication between the handpiece irrigation lumen and the tip irrigation tube. (Feinberg Decl., ¶9). Rather, the irrigation lumen of the tip simply extends into the irrigation lumen of the handpiece. As such, there can be no literal infringement of claim 9. Dr. Feinberg's Declaration establishes a genuine issue of material fact as to Bard's cross-motion.

Bard failed to address the issue of infringement under the doctrine of equivalents as to this claim element. Nevertheless, the Stryker InterPulse does not include the claimed "connector" under the doctrine of equivalents. (Feinberg Decl., ¶10). The entire element is missing from the accused tip. An element of an accused product is not, as a matter of law, equivalent to a limitation of the claimed invention if such a finding would entirely vitiate the limitation. *Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 117 S.Ct. 1040, 1047 (1997) ("It is important to ensure that the application of the doctrine [of equivalents], even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety."); *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1321 (Fed. Cir. 2003) ("If a court determines that a finding of infringement under the doctrine of equivalents 'would entirely vitiate a particular claimed element, 'then the court should rule that there is no infringement under the doctrine of equivalents." (citation omitted)); *Bell Atl. Network Servs., Inc. v. Covad*

*Communications Group, Inc.*, 262 F.3d 1258, 1279-80 (Fed. Cir. 2001) (same). Thus, this Court should deny summary judgment of infringement of claims 9 and 30.

**2. "A tip comprising. . . .a suction tube having a fluid path that channels aspirated irrigation fluid externally of the handpiece and directly to a suction source"**

The only claim element addressed in any detail in Bard's cross-motion is the "suction tube having a fluid path that channels aspirated fluid externally of the handpiece and directly to a suction source" that appears in claims 9 and 30. Stryker's memorandum in support of its motion for summary judgment of noninfringement addresses this language and reasons for noninfringement. Bard improperly eliminates the claim requirement that the claimed suction tube having a fluid path must be included <u>in the tip</u>. The '452 patent is premised on a specially-designed tip to be used with a conventional handpiece. Bard has twisted the disclosures and purposes of the '452 patent.

According to Bard, the "suction tube having a fluid path that channels aspirated irrigation fluid externally of the handpiece and directly to a suction source" need not be in the tip. Bard eliminates the requirement that the fluid path must be in the tip. Instead, Bard argues that the InterPulse handpiece, which uses a conventional tip, has a handpiece suction tube that is the claimed "tip comprising . . . a suction tube having a fluid path." Bard now argues that the '452 patent covers a conventional tip used with a specially-designed handpiece. Bard's argument contradicts the teachings of the '452 patent.

As described above, under *Phillips*, 2005 U.S. App. LEXIS 13954 at *48, courts are instructed to consider carefully the context of claim terms, and not look to single words (such as "of the handpiece") in the abstract as Bard urges. When properly considered in context, this claim element is fairly construed to mean "a tip suction tube having a fluid path that diverts

aspirated irrigation fluid outside of the handpiece suction tube and directly to a suction source," as described in Stryker's Memorandum in Support of Summary Judgment of Noninfringement. Stryker's conventional InterPulse tip does not include such a suction tube and cannot infringe claims 9 or 30 as a matter of law.

#### a. Proper Construction of the Claim Element

It is important to consider the disputed claim language in the context of the other claim language, not in a vacuum. *Id.* Here, claims 9 and 30 recite a "detachable, discardable suction and irrigation tip," the tip comprising an irrigation tube, a connector, and a suction tube. (Ex. A, Reexam Certificate, 1:51-66; 2:41-62). The tip suction tube functions to aspirate irrigation fluid from the irrigation site. The suction tube is further defined as "having a fluid path that channels aspirated irrigation fluid externally of the handpiece and directly to a suction source." Those same suction and irrigation tubes are "detachable together from the handpiece." The tip can then be discarded, enabling the handpiece to be reused. Bard's argument ignores this context.

In accordance with the claim language, the aspirated irrigation fluid is channeled through a fluid path externally of the handpiece. This necessarily means that the aspirated irrigation fluid is channeled through a fluid path <u>other than the handpiece suction tubing</u>. Aspirated fluid does not contact a handpiece other than to go through suction tubing of the handpiece. (Feinberg Decl., ¶14; Ex. B, '452 patent, 1:43-48; 2:18-25).

The primary object of the invention is "to provide an improved suction/irrigation tip that avoids contamination of the handpiece." (Ex. B, '452 patent, 2:13-15). In particular, the '452 patent points out that one problem with conventional suction irrigation devices is that "the biological debris ingested into the handpiece suction lumen (from the irrigation site) may contain infectious bacteria that could contaminate the handpiece." (*Id.*, 1:43-46). The Summary of the

Invention states that "the suction lumen in a detachable suction and irrigation tip is configured so that aspirated fluid and debris are passed directly to an external suction source when the tip is used with a conventional handpiece having both suction and irrigation lumens. No portion of the suction lumen in the tip is in fluid communication with the suction lumen in the handpiece." (*Id.*, 2:18-22). Thus, in accordance with the objects of the invention, a tip is provided that is "detachably connectible" to a handpiece and in which biological debris aspirated through the tip bypasses the suction lumen of the handpiece. *See Microsoft Corp. v. Multi-Tech, Sys,.* 357 F.3d 1340,1348 (Fed. Cir. 2004)("Those statements, some of which are found in the 'Summary of the Invention' portion of the specification, are not limited to describing a preferred embodiment, but more broadly describe the overall inventions . . ." )(emphasis added); *C.R. Bard,* 388 F.3d at 864 (in reviewing statements in the patent's "Summary of the Invention", the Court held that "other things being equal, certain sections of the specification are more likely to contain statements that support a limiting definition of a claim term than other sections...")(emphasis added).

The '452 patent discloses embodiments in which a specially-designed tip has a suction bypass to render useless the handpiece suction lumen. Stryker proposes the same thing: a claim construction that renders useless the handpiece suction lumen. Yet, Bard criticizes this very thing shown in the '452 patent. (Memo in support of Bard's Cross-Motion, pp. 3, 6). The entire point of the '452 patent is to provide a specially-designed tip to prevent contamination of the handpiece suction lumen to allow reusability of the handpiece.

Bard attempts to argue that because claims 4, 8, and 11 (not asserted in this case) recite a handpiece having both an irrigation lumen and a suction lumen and claims 9, 10, and 30 do not, it would be improper to "import" a suction lumen into those claims. However, the legal doctrine of claim differentiation, which presumes that different claims have different scopes, does not

apply here. *Kraft Foods Inc. v. International Trading*, 203 F.3d 1362, 1366 (Fed. Cir. 2000). Claims 4, 8, and 11 each include additional limitations such as a suction lumen plug and a protective member that are not found in the asserted claims. The recitation of these additional limitations eliminates any claim differentiation argument. *Creo Products, Inc. v. Presstek, Inc.*, 305 F.3d 1337, 1349 (Fed. Cir. 2002) (no redundancy between claims 11 and 23 and claims 12 and 24 because claims 12 and 24 provide additional specificity).

Figure 7 of the '452 patent shows how the '452 patent channels aspirated irrigation fluid externally of the handpiece and directly to a suction source. The '452 patent emphasizes that the handpiece suction tube is never used. (Ex. B, '452 patent, 4:3-7) ("[t]he suction tube 46 provides a direct pathway 50 for suction from the tip distal end 32 to a suction source. . . Aspirated debris therefore never enters the handpiece 10.") (emphasis added); (*Id.*, 6:46-52) ("[w]hen in use, the tip 16 is connected to the handpiece 10 and the flexible suction tubing 20 is connected to the tapered lower end 62 of the elbow shaped conduit 60. The handpiece suction tube 22 remains unused.") (emphasis added).



FIG. 7

Therefore, the '452 patent specification explains that the claim terms "tip comprising" a "suction tube having a fluid path that channels aspirated irrigation fluid externally of the handpiece and directly to a suction source" means that the tip prevents the aspirated fluid from entering the handpiece suction tube.

"[W]here the specification makes clear at various points that the claimed invention is narrower than the claim language might imply, it is entirely permissible and proper to limit the claims." *C.R. Bard, Inc. v. United States Surgical Corp.*, 388 F.3d at 865-66 (Fed. Cir. 2004) (holding that the specification of the patent-in-suit required that the claim term "plug" must be a pleated plug); *Astrazeneca AB v. Mutual Pharmaceutical Co., Inc.*, 384 F.3d 1333, 1339 (Fed. Cir. 2004) (holding that the specification limited the scope of the claim term "solubilizer" to surfactants); *Alza Corp. v. Mylan Labs.*, 391 F.3d 1365, 1370 (Fed. Cir. 2004) (holding that the specification and file history required the claim term "skin permeable form" be construed to exclude fentanyl citrate).[1] Claims cannot enlarge the scope of the patent grant beyond what the inventor has described as the invention. *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1352 (Fed. Cir. 2001). Here, the invention <u>is</u> the specially-designed tip having a suction bypass on the tip.

The file history also sheds light on the meaning of the claim language. In a November 2, 2000 Preliminary Amendment filed concurrently with the patent application, Bard argued that, for **<u>all claims</u>**:

> To irrigate [such a sore] **<u>with applicant's invention</u>**, a suction and irrigation tip is selected and is detachably connected to a reusable handpiece 10 (see Figs. 1 and 3 below). . . . The invention provides an arrangement by which the flow path of aspirated material is diverted away from and bypasses the handpiece. To that end, the detachable **<u>tip</u>** 16 has a suction tube 46 with a conduit 60 that defines a **<u>fluid bypass path that prevents aspirated material from being channeled into contact with the handpiece 10 and its suction lumen 22 (see all claims).</u>** The handpiece thus does not become contaminated and may be used again, thereby reducing the cost of treatment.

---

[1] For similar rulings see also *Alloc, Inc. v. Int'l Trade Comm.*, 342 F.3d 1361, 1370 (Fed. Cir. 2003)(holding that the claims require "play" in the subject flooring systems because the specification teaches that the invention provides for "play" in the positioning of floor panels, even though the claims at issue do not recite the term "play"); *Backyard Nature Products, Inc. v. Woodlink, Ltd.*, 2003 U.S. App. LEXIS 24077 (Fed. Cir. November 26, 2003)(limiting the term "mesh" to "expanded mesh" due to the specification); *Datapoint Corp. v. Standard Microsystems Corp.*, 2002 U.S. App. LEXIS 3617 (Fed. Cir. February 15, 2002) (holding that the specification required the claim term "LANs" [local area networks] be limited to "bus-type LANs.").

(Ex. C, Preliminary Amendment, pp. 4-5) (emphasis added). The Bard admission that "all claims" require a fluid bypass around the suction tube of the handpiece was repeated verbatim in a later Amendment filed on July 12, 2002. (Ex. D, Amendment, p. 3). *See C.R. Bard, Inc.*, 388 F.3d at 864 ("Statements that describe the invention as a whole, rather than statements that describe only preferred embodiments, are more likely to support a limiting definition of a claim term.") In both instances, Bard's statement was made to summarize and contrast all of the claims with the prior art, thus providing an indication of the scope of "all claims." *Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1347 (Fed. Cir. 1998) (holding that global comments made to distinguish applicant's 'claimed invention' from the prior art are not eliminated simply because the applicants later specifically distinguished each claim from the prior art on narrower grounds). The Federal Circuit admonishes that "[t]he public notice function of a patent and its prosecution history requires that a patentee be held to what he declares during the prosecution of his patent." *Springs Window Fashions v. Novo Indus., L.P.*, 323 F.3d 989, 995 (Fed. Cir. 2003). In light of Bard's admissions to the Patent Office, all of the '452 patent claims must be construed as providing a flow path that diverts aspirated debris away from the handpiece and prevents the aspirated materials from being channeled into contact with the handpiece suction tube.[2]

Bard attempts to dismiss as "inaccurate" its prosecution statements requiring the bypass path to "prevent[] aspirated material from being channeled into contact with the handpiece 10 and its suction lumen 22 (see all claims)." In addition, Bard argues that the prosecution statement that "[t]he handpiece also may have a suction lumen 22" means that the claims cover a

[2] Even though Claim 30 was added as part of the reexamination of the '452 patent, Davol's description of its invention as requiring a fluid bypass around the suction tube of the handpiece still applies to claims added during reexamination.

handpiece without a suction lumen.[3] Citing *Rambus* and *Intervet*, Bard urges the Court to ignore its allegedly "inaccurate" prosecution statements in favor of its newly-proposed meanings of carefully anesthetized claim excerpts. Bard's argument is fatally flawed.

As an initial matter, *Rambus* and *Intervet* are distinguishable because both cases involved conspicuous error where the claim language was directly contradictory to the prosecution history statements. *Rambus, Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1090 (Fed. Cir. 2003); *Intervet Am., Inc. v. Kee-Vet Labs., Inc.*, 887 F.2d 1050, 1054 (Fed. Cir. 1989). In the present case, there are no contradictions, direct or otherwise, between the claim language and the prosecution history statements. (Feinberg Decl., ¶15). Each of the asserted claims recites a fluid path in the tip. The specification describes only one embodiment: a tip fluid path bypassing the handpiece suction lumen. (*Id.*, ¶13). The existence of a single sentence indicating that the handpiece "may include a suction lumen" does not constitute disclosure of a handpiece without a suction tube. (*Id.*, ¶12). *Watts v. XL Sys., Inc.*, 232 F.3d 877, 883 (Fed. Cir. 2000) (permissive language in specification was insufficient to disclose a second embodiment). This is particularly so where the intrinsic record is unambiguously directed to a handpiece having both suction and irrigation capabilities. (*Id.*). As such, Bard's prosecution statements regarding the function of the fluid path (to bypass the handpiece suction lumen) do not give competitors "reason to believe that a mistake was made or that the inventor meant anything other than what he said." *Hockerson-Halberstadt, Inc. v. Avia Group, Int'l, Inc.*, 222 F.3d 951, 957 (Fed. Cir. 2000).

The significance of avoiding the handpiece suction lumen is further confirmed by Bard's argument over the Sorenson prior art that

---

[3] Bard incorrectly recasts Stryker's argument as requiring that "of the handpiece" means "of the handpiece suction tube." (Memo in support of Bard's Cross-Motion, pp. 3-12). To the extent Bard suggests the claims cover handpieces without a suction lumen, Bard is wrong. The '452 patent nowhere describes using the claimed diverter tip with an irrigation-only handpiece, which is reusable <u>without</u> a diverter tip. *North Am. Vaccine, Inc. v. American*

> [t]he suction tube 13 in Sorenson does not have a fluid bypass path by which aspirated irrigation is channeled to a suction source in a manner that does not communicate with the handpiece suction lumen. In Sorenson, the handpiece (pistol 1) includes a suction lumen, part of which extends through a suction control valve 6 by which aspirated material is directed to suction hose 9. <u>Sorenson fails to disclose an arrangement with a fluid path that avoids the suction lumen of the handpiece</u>.

(Ex. D, Amendment, p. 7) (emphasis added). "Estoppel arises when an amendment is made to secure the patent and the amendment narrows the patent's scope. . . .A patentee who narrows a claims as a condition for obtaining a patent disavows his claim to the broader subject matter." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 737 (2002). Bard thus disclaimed any arrangement by which aspirated fluid communicates with the handpiece suction lumen. *Texas Instruments, Inc. v. United States Int'l Trade Comm'n*, 988 F.2d 1165, 1174-75 (Fed. Cir. 1993). Bard's argument, while directed to claim 1, applies with equal force to asserted claims 9, 10 and 30 because each of the asserted claims recites the aspirated fluid path in the tip. *Hockerson-Halberstadt*, 222 F.3d at 957 (finding that statements made to the Patent Office as to a term present in all of the asserted claims "apply with uniform force to all the claims"); *Digital Biometrics*, 149 F.3d at 1347 (noting that prosecution arguments as to one claim are relevant to interpreting other claims in the same patent absent a clear indication to the contrary). In view of the above and as described in Stryker's Motion, the fluid path of the asserted claims must be located in the tip and must bypass the handpiece suction tube.

**b. The Conventional InterPulse Tip Does Not Include the Claimed Tip Suction Tube that Channels Aspirated Fluid Externally of the Handpiece**




As shown at right, Stryker uses a conventional tip for its InterPulse system. The conventional tip does not include any

---

*Cyanamid Co.*, 7 F.3d 1571, 1577 (Fed. Cir. 1993). Indeed, the '452 patent title ("Suction and Irrigation Handpiece and Tip") confirms that the invention is directed to suction and irrigation handpieces, not irrigation-only handpieces.






tip suction tube that channels aspirated fluid externally of the handpiece suction lumen, as required by the claims. (Feinberg Decl., ¶19). To the contrary, the InterPulse conventional tip channels aspirated fluid from the tip suction tube directly into the handpiece suction lumen. The handpiece suction tubing cannot be considered to be the "tip comprising. . . a suction tube having a fluid path that channels aspirated fluid externally of the handpiece and directly to a suction source" because handpiece suction tubing is, by definition, not part of the tip. There can be no literal infringement as a matter of law.

Moreover, there is no infringement under the doctrine of equivalents. The accused InterPulse tip includes no bypass fluid path at all, and cannot be said to have an equivalent without entirely gutting the claim of any meaning. *Warner-Jenkinson*, 117 S.Ct. at 1047. In addition, in view of the unambiguous statements in the '452 patent and prosecution history, Bard is estopped from arguing that directing fluid into the handpiece suction tubing is the equivalent of avoiding the handpiece suction tubing. *Festo*, 535 U.S. at 737. Indeed, the entire point of the '452 patent is to provide a "suction and irrigation tip" that includes a bypass fluid path so that the suction lumen of the handpiece is not contaminated and can therefore be reused. (Feinberg Decl., ¶20). Throwing the entire handpiece suction tubing away and replacing it with new tubing for subsequent use is not the equivalent of not using the handpiece suction lumen at all. (*Id.*).

**3. "the suction tube and irrigation tube being detachable together from the handpiece"**

Claims 9 and 30 each require that the tip comprises "an irrigation tube. . . .and a suction tube. . .the suction tube and irrigation tube being detachable together from the handpiece. . . ."

Bard points to the handpiece suction tubing (not the tip suction tube) of the accused InterPulse as allegedly corresponding to the "suction tube having a fluid path that channels aspirated irrigation fluid externally of the handpiece and directly to a suction source." The claims require that the suction and irrigation tube of the tip are detachable together from the handpiece. However, in the InterPulse product, the conventional tip and the handpiece suction tubing must be separately detached. (Feinberg Decl., ¶22). Stryker's Instructions for Use clarify that the handpiece suction tube must be removed after the tip is removed. (Ex. E, Instructions for Use). Since the InterPulse handpiece suction tube is not "detachable together" with the tip irrigation tube, claims 9 and 30 cannot be infringed. The Feinberg Declaration raises a genuine issue of material fact as to this element of Bard's cross-motion.

Bard failed to address the issue of infringement under the doctrine of equivalents as to this claim element. However, separately detaching the handpiece suction tube and the suction and irrigation tip from the InterPulse handpiece is not the equivalent to the claim's opposite requirement of detaching the tip irrigation tube and tip suction tube together from the handpiece. (Feinberg Decl., ¶23). Bard's argument would, once again, eliminate the claim element "detachable together," in violation of the doctrine of equivalents. *Warner-Jenkinson*, 117 S.Ct. at 1047.

#### 4. "whereby the tip can be discarded, enabling the handpiece to be reused"

Claims 9 and 30 each include the limitation "the suction tube and irrigation tube being detachable together from the handpiece whereby the tip can be discarded, enabling the handpiece to be reused." Bard submits that the claim language "enabling the handpiece to be reused" means "enabling the handpiece to be reused because it remains aseptic." (Memo in support of Bard's Cross-Motion, pp. 12-13).




Under this claim construction, it is clear that the InterPulse system cannot infringe. As can be seen in the figure at right, when the tip is discarded, the handpiece is not "enabled to be reused," as required by the claims. Removal of the InterPulse conventional tip alone does not render the handpiece aseptic. (Feinberg Decl., ¶25). Instead, two additional steps are necessary: (1) the handpiece suction tubing must be removed and discarded, and (2) new handpiece suction tubing must be attached. (*Id.*). These two additional, separate steps are not described or disclosed in the '452 patent. As such, the accused InterPulse does not include the claim element "the suction tube and irrigation tube being detachable together from the handpiece whereby the tip can be discarded, enabling the handpiece to be reused." The Feinberg Declaration raises a genuine issue of material fact as to this element of Bard's cross-motion. Summary judgment of infringement is therefore improper.




Bard failed to address the issue of infringement under the doctrine of equivalents as to this claim element. Discarding the InterPulse tip does not render the handpiece "enabled to be reused." The whole point of the '452 patent is to enable the handpiece to be reused merely by replacing the specially designed tip. Failure to do so cannot be deemed to be the equivalent. *Warner-Jenkinson*, 117 S.Ct. at 1047. (Feinberg Decl., ¶26).

**B. Stryker Does Not Infringe Independent Claim 10**

Claim 10 is a method claim that was not amended during the reexamination of the '452 patent. Claim 10 recites "a method of irrigating an irrigation site and aspirating the irrigation liquid from the aspiration site" but includes language similar in scope to the disputed language

described above with respect to claims 9 and 30. Thus, the analysis with respect to claims 9 and 30 is adopted for claim 10 as well. Since claim 10 is not infringed, dependent claim 24 cannot be infringed as a matter of law. *Wahpeton*, 870 F.2d at 1552.

**1. "directing the aspirated irrigation fluid along a path that is disposed exteriorly of the handpiece"**

Claim 10 cannot be infringed by the accused InterPulse because users of the InterPulse do not perform the step of "aspirating spent irrigation fluid from the irrigation site through the suction tube of the tip and directing the aspirated irrigation fluid along a path that is disposed exteriorly of the handpiece" as required by the claim. The language "exteriorly of the handpiece" should be interpreted in the same manner as the language "externally of the handpiece" from claims 9 and 30 above.

For the same reasons as described above with respect to the "externally of the handpiece" language from claims 9 and 30, the accused InterPulse does not "direct[] the aspirated fluid along a path that is disposed exteriorly of the handpiece." As a result, summary judgment of infringement is improper.

**2. "thereafter detaching the tip, including the irrigation tube and suction tube together from the handpiece and discarding them"**

Claim 10 further recites the step of "thereafter detaching the tip, including the irrigation tube and suction tube together from the handpiece and discarding them." The interpretation of this claim element mirrors the interpretation of the claim language "the suction tube and irrigation tube being detachable together from the handpiece. . . ." from claims 9 and 30 above. For the reasons described above with respect to claims 9 and 30, the use of the accused InterPulse does not include this step because the suction tube that includes the "path that is disposed exteriorly of the handpiece" is not in the tip, and therefore detaching the tip" does not

result in detaching the "irrigation tube and suction tube together from the handpiece" as required by the claim. Claim 10 also requires a "connection portion of a discardable tip." To the extent this element refers to a "connector" in the tip, the Stryker InterPulse tip does not have a "connector" for the reasons stated above with respect to claims 9 and 30.

### 3. "attaching an unused discardable suction and irrigation tip to the handpiece in readiness for another procedure"

Claim 10 also recites a step of "attaching an unused discardable suction and irrigation tip to the handpiece in readiness for another procedure." The claim language "ready for another procedure" means that the handpiece is aseptic and ready to be reused. (*See* Memo in support of Bard's Cross-Motion, pp. 12-13). The claim would make no sense otherwise. (*Id.*, p. 13). As described above with respect to the "whereby the tip can be discarded, enabling the handpiece to be reused" element of claims 9 and 30, discarding the tip or attaching a new InterPulse suction and irrigation tip to the InterPulse handpiece does not render the handpiece ready for another procedure. This step is not infringed.

## II. Conclusion

Stryker's motion for summary judgment of noninfringement should be granted as a matter of law, and will be dispositive of all issues in this case. The parties agree that there are no genuine issues of material fact as to Stryker's motion. Stryker's motion, if granted, will render as moot the Bard cross-motion.

As to Bard's cross-motion, there are genuine issues of material fact that require denial of the motion. The accused InterPulse does not include each and every element of the asserted claims. If independent claims 9, 10, and 30 are not infringed, the claims depending therefrom cannot be infringed. Therefore, Bard's cross-motion for summary judgment should be denied.

Respectfully submitted,

Dated: August 26, 2005

Joseph Avanzato /MJK

Joseph Avanzato (#4774)
ADLER POLLOCK & SHEEHAN P.C.
2300 Financial Plaza
Providence, RI 02903
(401) 274-7200

Gregory J. Vogler (admitted *pro hac vice*)
Sharon A. Hwang (admitted *pro hac vice*)
McANDREWS, HELD & MALLOY, LTD.
500 West Madison Street
Chicago, Illinois 60661
(312) 775-8000

Of Counsel:

Curtis E. Hall
Aaron R. Pettit
STRYKER CORPORATION
2725 Fairfield Road
Kalamazoo, Michigan 49002
(616) 385-2600

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing **STRYKER CORPORATION'S OPPOSITION TO BARD'S CROSS-MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT** was served by placing true and correct copies thereof:

**Via Hand Delivery**

Mark A. Pogue
EDWARD & ANGELL, LLP
2800 Financial Plaza
Providence, RI 02903
401/274-9200

**Via FEDERAL EXPRESS**

Claire Laporte
FOLEY HOAG, LLP
155 Seaport Boulevard
Boston, MA 02210-2600
617/832-1000

this 26th day of August, 2005.

Valare Lanctot