IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| C.R. BARD, Inc., and DAVOL, INC., | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 02-515ML |
| | ) | Judge Mary M. Lisi |
| STRYKER CORPORATION, | ) | |
| Defendant. | ) | |

**DECLARATION OF BARRY N. FEINBERG, PH.D, P.E., IN SUPPORT OF DEFENDANT STRYKER CORPORATION'S OPPOSITION TO BARD'S CROSS MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT OF THE '452 PATENT**

I, Barry N. Feinberg, hereby make the following declaration in support of Stryker's Opposition to Bard's Cross-Motion for Summary Judgment of Infringement:

**A. My Background**

1. I am a registered professional engineer, licensed to practice engineering in the states of Illinois and Indiana, board certified in Clinical Engineering by the International Certification Commission, and I am a Fellow of the Institute of Electrical and Electronics Engineers (IEEE) and a Fellow of the American Institute for Medical and Biological Engineering. I have worked as a consulting engineer for thirty-four years and as a professor of electrical engineering for thirteen years teaching biomedical, clinical, and electrical engineering. I have also been a Senior Scientist developing new medical products for a large medical products company.

2. I hold a Ph.D. degree in Engineering from Case Institute of Technology of Case Western Reserve University, a Masters of Electrical Engineering from the University of Louisville - Speed Scientific School, and Bachelor of Science degrees in electrical engineering and mathematics from the University of Michigan.

**B. Familiarity with Subject Matter of this Case**

3. I have studied and analyzed the '452 patent-in-suit, the '452 Reexamination Certificate, and their corresponding file histories. I have submitted an Expert Report and a Rebuttal Expert Report in the present case based on my study and analysis of the '452 patent and the Stryker InterPulse handpiece and tip. My expert reports have detailed my professional engineering opinion that the '452 patent is invalid and that the accused InterPulse system does not infringe the asserted claims of the '452 patent.

**C. Noninfringement Analyses**

4. It is my professional engineering opinion that the accused InterPulse system does not infringe asserted claims 9, 10, 20, 21, 23, 24, 26, 28, or 30 of the '452 patent, either literally or under the doctrine of equivalents.

5. Claims 9 and 30 each recite a "tip comprising. . . .a connector for detachably connecting the irrigation tube to the handpiece to provide fluid communication between the irrigation lumen of the handpiece and the irrigation tube." The claim language supports an interpretation of the "connector" as being something other than the tip irrigation tube itself, such as an intermediate structure or housing that serves to (1) "detachably connect" the irrigation tube of the tip to the irrigation lumen of the handpiece, and (2) provide fluid communication between the handpiece irrigation lumen and the tip irrigation tube.

6. The '452 specification describes "connector 56" as located at the tip's proximal end, and as removably connecting the tip 16 to the handpiece. (Ex. B, '452 patent, 4:11-12). The "connector" is also described as having an irrigation fluid chamber 66 that receives fluid from the handpiece irrigation port 30 through an irrigation connector 68. (*Id.*, 4:36-38).

7. During the prosecution of the '452 patent, Bard submitted a Preliminary Amendment to the Patent Office in which Bard explained that "[t]he proximal end of the detachable tip 16 is configured to detachably mate with the handpiece by engagement of a connector 56 at the proximal end of the tip with a fitting 26 of the handpiece. . . .The connector 56 also has an irrigation fluid chamber 66 that receives fluid from the handpiece irrigation port 30 through an irrigation connector 68." (Ex. C, Preliminary Amendment, p. 5; Ex. D, Amendment, pp. 3-4).

8. Based on the '452 patent disclosure and Bard's statements to the Patent Office, in my opinion, the claimed "connector" should be interpreted to mean a tip structure that is separate from the suction and irrigation tubes of the tip that causes connection between the tip and the handpiece and provides fluid communication therebetween.

9. In my opinion, the accused InterPulse tip does not include a "connector" as required by claims 9 and 30. Based on my analysis of the InterPulse products, the accused InterPulse tip does not include any structure separate from the suction and irrigation tubes of the tip that connects the tip to the handpiece and provides fluid communication therebetween. The InterPulse tip simply plugs directly into the suction and irrigation lumens of the handpiece with no intermediate intervening structure.

10. In my opinion, the accused InterPulse tip does not include the claimed "connector" under the doctrine of equivalents because there is no separate tip structure to

perform the connecting function. It is my understanding that there can be no equivalents if the entire element is missing in the accused structure.

11. Claims 9 and 30 each recite "a tip comprising. . .a suction tube for aspirating irrigation fluid from the irrigation site, the suction tube having a fluid path that channels aspirated irrigation fluid externally of the handpiece and directly to a suction source."

12. In my opinion, the '452 patent describes a specially-designed tip having a bypass fluid path to divert aspirated fluid away from the handpiece suction lumen so that the handpiece does not become contaminated and can thereafter be reused. The '452 patent emphasizes that the primary object of the invention is providing a tip that permits handpiece reuse. (Ex. B, '452 patent, Abstract, 1:43-51; 2:13-15; 2:17-25; 2:53-61; 3:30-34; 3:51-53). There is no disclosure of a handpiece without a suction tube because such a handpiece is reusable even without the specially-designed tip.

13. Based on my review of the '452 patent, the specification describes only one embodiment: a tip fluid path bypassing the handpiece suction lumen.

14. In my opinion, in normal operation of a pulsed lavage device, aspirated fluid does not contact a handpiece other than to go through suction tubing of the handpiece. It is meaningless to speak about bypassing a handpiece unless it is in the context of bypassing the suction tubing of the handpiece.

15. I have reviewed the file history of the '452 patent and its parent patent, the '292 patent. I note that throughout the file history, Bard represented to the Patent Office that <u>all claims</u> include "the detachable tip 16 ha[ving] a suction tube 46 with a conduit 60 that defines a fluid bypass path that prevents aspirated material from being channeled into contact with the handpiece 10 and its suction lumen 22." (Ex. C, Preliminary Amendment, p. 5; Ex. D,

Amendment, p. 3). I understand that Bard is now arguing that those statements were "inaccurate." (Bard's Cross-Motion, p. 11). I don't agree. Those statements are consistent with the '452 patent disclosure and my understanding of the teaching of the '452 patent.

16. During the prosecution of the '452 patent, Bard argued over a Patent Office rejection based on the Sorenson prior art that "[t]he suction tube 13 in Sorenson does not have a fluid bypass path by which aspirated irrigation is channeled to a suction source in a manner that does not communicate with the handpiece suction lumen. In Sorenson, the handpiece (pistol 1) includes a suction lumen, part of which extends through a suction control valve 6 by which aspirated material is directed to suction hose 9. Sorenson fails to disclose an arrangement with a fluid path that avoids the suction lumen of the handpiece." (Ex. D, Amendment, p. 7).

17. Bard also argued over a Patent Office rejection based on the Niermann prior art that "Niermann does not disclose such a tip that also has a suction tube with a bypass path within the detachable tip that channels aspirated irrigation fluid directly to a suction source so that the aspirated fluid does not enter the handpiece suction lumen." (Ex. C, Preliminary Amendment, p. 9).

18. Based on the teachings of the '452 patent and the arguments made by Bard in the Patent Office, it is my opinion that the language "a tip comprising. . .a suction tube for aspirating irrigation fluid from the irrigation site, the suction tube having a fluid path that channels aspirated irrigation fluid externally of the handpiece and directly to a suction source" means "a tip suction tube having a fluid path that diverts aspirated irrigation fluid outside of the handpiece suction tube and directly to a suction source."

19. In my opinion, the InterPulse tip does not include the claimed suction tube. The InterPulse tip is a conventional design that plugs into the handpiece so that the tip suction tube

communicates directly with the handpiece suction tube. As a result, the InterPulse tip does not infringe claims 9 or 30.

20. In my opinion, the accused InterPulse tip is not equivalent to the claimed tip. One of the primary objects of the '452 patent is to provide a suction and irrigation tip that includes a bypass fluid path so that the suction lumen of the handpiece is not contaminated and the handpiece can therefore be reused. Directing aspirated fluid directly into the handpiece suction tubing, throwing the handpiece suction tubing away, and replacing the suction tubing with new tubing for subsequent use is not the equivalent of diverting aspirated fluid away from the handpiece suction tubing so that the handpiece suction tubing is not used – it is the opposite. As a result, the InterPulse tip does not infringe claims 9 or 30 under the doctrine of equivalents.

21. Claims 9 and 30 each recite "an irrigation tube. . . .and a suction tube. . . the suction tube and irrigation tube being detachable together from the handpiece . . ." Based on the claim language, it is clear that the "irrigation tube" and the "suction tube" refer to the tip irrigation tube and the tip suction tube having the fluid bypass. As discussed above, the InterPulse tip does not include a fluid bypass.

22. Bard points to the InterPulse handpiece suction tubing as corresponding to the "suction tube." If this is the case, then in my opinion, the InterPulse cannot meet the claim element "the suction tube and irrigation tube being detachable together from the handpiece. The conventional InterPulse tip and the handpiece suction tubing must be separately detached. Stryker's Instructions for Use state that the handpiece suction tube should be removed only after the tip is removed, and after the handpiece suction tubing is separated from the handpiece irrigation tubing. (Ex. E, Instructions for Use). In my opinion, the InterPulse does not infringe

claims 9 or 30 because the InterPulse handpiece suction tube is not "detachable together" with the tip irrigation tube.

23. In my opinion, separately detaching the handpiece suction tube and the conventional tip from the InterPulse handpiece is not the equivalent and is the opposite of the claim requirement that the tip irrigation tube and tip suction tube with fluid bypass are "detachable together." Therefore, in my opinion, the InterPulse does not infringe the "detachable together" requirement of claims 9 or 30 under the doctrine of equivalents.

24. Claims 9 and 30 recite "the suction tube and irrigation tube being detachable together from the handpiece whereby the tip can be discarded, enabling the handpiece to be reused." I understand that Bard has contended that the claim language "enabling the handpiece to be reused" means "enabling the handpiece to be reused because it remains aseptic."

25. Under Bard's claim construction, it is my opinion that the InterPulse system cannot infringe claims 9 or 30. When the conventional tip of the InterPulse is discarded, the handpiece is not "enabled to be reused because it remains aseptic." Instead, two additional steps are required: (1) the suction tubing must be removed and discarded, and (2) new handpiece suction tubing must be attached. Removal of the InterPulse tip alone does not render the handpiece aseptic and enabled to be reused.

26. In my opinion, the InterPulse system does not infringe claims 9 and 30 under the doctrine of equivalents. Discarding the InterPulse tip and <u>not</u> rendering the handpiece "enabled to be reused" cannot be the equivalent of discarding the tip and rendering the handpiece "enabled to be reused." They are opposites.

27. Since claims 9 and 30 are not infringed, it is my understanding that dependent claims 20, 21, 23, 26, and 28 cannot be infringed.

28. Claim 10 is a method claim that includes the step of "directing the aspirated irrigation fluid along a path that is disposed exteriorly of the handpiece." For the same reasons described earlier with respect to the claim language "the suction tube having a fluid path that channels aspirated irrigation fluid externally of the handpiece and directly to a suction source" from claims 9 and 30, it is my opinion that the InterPulse system cannot infringe claim 10 either literally or under the doctrine of equivalents.

29. Claim 10 also includes the claim elements "connection to a connection portion of a discardable tip," "thereafter detaching the tip, including the irrigation tube and suction tube together from the handpiece and discarding them," and "attaching an unused discardable suction and irrigation tip to the handpiece in readiness for another procedure." That language mirrors the language "a tip comprising. . . .a connector," "the suction tube and irrigation tube being detachable together from the handpiece," and "whereby the tip can be discarded, enabling the handpiece to be reused" from claims 9 and 30. For the same reasons as described with respect to those claim elements of claims 9 and 30, the InterPulse system does not infringe claim 10 either literally or under the doctrine of equivalents.

30. It is my understanding that claim 24 cannot be infringed if claim 10 is not infringed.

Pursuant to Section 1746 of Title 28 of the United States Code, I declare the foregoing to be true and correct.

Barry Feinberg, PE

Barry N. Feinberg, Ph.D, P.E.