UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

C.R. BARD, INC., and DAVOL INC.,

Plaintiffs,

v.

STRYKER CORPORATION,

Defendant.

C.A. No. 02- 515ML

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT**

Dated: October 6, 2005

C.R. BARD, INC., and DAVOL INC.

By their Attorneys,

Mark A. Pogue (#3441)
Armando E. Batastini (#6016)
Edwards & Angell, LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6611 (fax)

Claire Laporte (admitted *pro hac vice*)
Mitchell J. Matorin
John Gransky
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210-2600
Tel. (617) 832-1000

Stryker's opposition to Bard's cross-motion for summary judgment of infringement shows plainly that there is no genuine factual dispute about the structure of Stryker's accused products or how they work. The products are not mechanically complex, and there is no dispute about their structure, function, or operation. Although Stryker purports to raise factual issues through the declaration of its expert witness, Barry Feinberg, even a cursory review of that declaration and of Stryker's brief makes clear that Stryker's "disputed facts" are illusory and consist only of arguments about claim construction—which is a matter of law for the Court to decide. With respect to claim construction, Stryker raises three new arguments that it did not make in its brief in support of its motion for summary judgment.[1] As shown below, these new arguments are no better than the old ones. The Court should grant Davol's cross-motion for summary judgment of infringement.

## ARGUMENT[2]

Stryker's opposition to Davol's cross-motion is premised on erroneous interpretations of three claim elements. These interpretations depart from the plain English meaning of the words, which govern unless they contradict a definition found in the patent itself. *See, e.g., Phillips v. AWH Corp.*, Nos. 03-1269, 03-1286, 2005 WL 1620331, at *5 (Fed. Cir. July 12, 2005) (*en banc*) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582) (The words of a claim "are generally given their ordinary and customary meaning."). Because there is no basis for

---

[1] That Stryker did not raise these new claim construction arguments in support of its own motion for summary judgment of non-infringement speaks volumes as to the credibility of those arguments—if Stryker believed they were substantial arguments, surely Stryker would have used them to support its own motion.

[2] Stryker's opposition to Davol's cross-motion repeats its principal argument concerning the "fluid path that channels aspirated irrigation fluid externally of the handpiece." Davol has fully briefed this issue in its combined Plaintiffs' Memorandum in Opposition to Stryker's Renewed Motion for Summary Judgment of Non-Infringement or Invalidity and In Support of Their Cross-Motion for Summary Judgment of Infringement, and does not repeat its arguments here.

according the disputed claim elements any meaning other than their ordinary meaning, Stryker's arguments fail, and Davol is entitled to summary judgment of infringement.

## I. **Stryker's InterPulse Tips Include a "Connector," When That Term Is Properly Construed.**

Claims 9 and 30 each require a tip having a "connector":

> . . . the tip comprising: . . . a *connector* for detachably connecting the irrigation tube [of the tip] to the handpiece to provide fluid communication between the irrigation lumen of the handpiece and the irrigation tube [of the tip].

(emphasis added). "Connector" is not a technical term that requires some specialized interpretation—it is no more than the noun form of the verb "connect," which simply means to join or fasten together. (*See, e.g.*, Am. Heritage Dictionary (3rd ed. 1993), attached hereto as Exhibit 13.) Nothing in the specification contradicts this plain English meaning of the word. Therefore, Claims 9 and 30 require only that the tip have a structure that joins the irrigation tube of the tip to the handpiece.[3] There can be no dispute that Stryker's InterPulse tips meet this limitation.

Claims 9 and 30 require that the "connector" perform two functions: (i) detachably connecting the irrigation tube of the tip to the handpiece, and (ii) providing "fluid communication" between the irrigation lumen of the handpiece and the irrigation tube of the tip. The connector portion of Stryker's InterPulse tip indisputably serves both purposes. Stryker admits that the InterPulse tip irrigation tube is fastened or joined to the handpiece by inserting a

---

[3] Stryker only half-heartedly argues otherwise, implicitly acknowledging that its desired construction is not mandated by the language of the patent. *See, e.g.,* Stryker Opp. at 5 (claim language "supports" its interpretation); *id.* at 6 (description of connector is "consistent with an interpretation" that connector is separate from irrigation tube of tip). Stryker points to nothing in the patent as *inconsistent* with or *not* supportive of the plain English meaning of the word "connector." In the absence of clear evidence that the patentee intended a different meaning, the words of the patent should be construed in accordance with their ordinary meaning. *See CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) (noting requirement of clear evidence to overcome the heavy presumption in favor of the ordinary and customary meaning of claim terms).

portion of it into the handpiece. *See* Feinberg Decl. ¶ 9 ("The InterPulse tip simply *plugs directly into* the . . . irrigation lumen[] of the handpiece with no intermediate intervening structure."[4]). The portion of the irrigation tube of the tip that fits into the handpiece is the "connector" because it "joins or fastens together" those two parts and provides fluid communication between the irrigation lumen of the handpiece and the irrigation tube of the tip. The connector portion of the tip is demarcated on Stryker's InterPulse tips by a circumferential ridge approximately 7/8" from the proximal end of the irrigation tube. It includes the black O-ring that provides a water-tight seal with the handpiece.[5] *See* Exhibits 14 and 15 attached hereto; *see also* Exhibits 4 and 5 attached to Davol's Combined Brief.

Ignoring the plain meaning of the word "connector," Stryker seeks to import into the claims details Stryker thinks are shown in the illustrative embodiment discussed in the specification. Stryker makes two claim construction arguments based on this faulty reasoning: first, that the "connector" must be "something different and separate from the suction and irrigation tubes of the tip," and second, that the "connector" must contain an "irrigation fluid chamber." Both of these newly-minted arguments, which are shown in tabular form below, are erroneous.

---

[4] The ellipsis replaces Dr. Feinberg's reference to the suction tube of the tip because the claims do not speak of the connector in the context of the suction tube.

[5] In addition to the photographic exhibits attached to this brief and to Davol's Combined Brief, Davol will bring a sample InterPulse tip and handpiece to the hearing on the cross-motions.

| Claim Element (Claims 9 and 30) | Davol's "Plain Language" Interpretation | Stryker's Desired Interpretation |
|---|---|---|
| a connector for detachably connecting the irrigation tube to the handpiece to provide fluid communication between the irrigation lumen of the handpiece and the irrigation tube | a connector for detachably connecting the irrigation tube to the handpiece to provide fluid communication between the irrigation lumen of the handpiece and the irrigation tube | a connector, ***different and separate from the suction and irrigation tubes of the tip, containing an irrigation fluid chamber,*** for detachably connecting the irrigation tube to the handpiece to provide fluid communication between the irrigation lumen of the handpiece and the irrigation tube |

As an initial matter, it is entirely improper to import limitations from a disclosed embodiment to limit the scope of the claims. *See Phillips*, 415 F.3d at 1323 (reaffirming prohibition against importing limitations from specification). More fundamentally, Stryker's arguments cannot be squared with the patent's specification.[6]

**A. <u>The "Connector" Need Not Be "Different And Separate From" The Irrigation Tube Of The Tip.</u>**

The specification simply does not support Stryker's contention that the "connector" of Claims 9 and 30 must be "different and separate from" the irrigation tube of the tip. In fact, "connector 56" of the disclosed embodiment is an integral part of the irrigation tube of the tip. Fig. 3 of the '452 patent itself plainly indicates as much, when the drawings are interpreted consistently with 37 C.F.R. §1.84, which requires certain conventions to be observed in patent drawings. In particular, cross-sectional drawings, such as Figure 3, must use hatching to indicate

[6] Stryker claims, as if it were significant, that its tip looks different from the tip shown in the '452 patent. The Court should not be misled by Stryker's irrelevant argument. *See, e.g., Anchor Wall Systems, Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1306-07 (Fed. Cir. 2003) ("[T]he mere fact that the patent drawings depict a particular embodiment of the patent does not operate to limit the claims to that specific configuration."). The '452 patent specification describes the invention with reference to a handpiece that uses "coaxial" tips, wherein the suction tube is inside the irrigation tube. Stryker's InterPulse tip is known as an "over/under" tip, where the suction tube runs outside and above the irrigation tube. For purposes of the patent, this distinction is irrelevant, because the claims are not limited to coaxial tips, and Stryker does not presume to argue that they are. Moreover, Stryker also sells a coaxial version of the InterPulse tip that "looks" very much like the tip shown in the patent specification. (*See* Exhibit 15 hereto.) Whether co-axial or over/under, the InterPulse tips satisfy each element of the claims in suit.

parts of the "same item" and different hatching to indicate parts that are, by contrast, "juxtaposed different elements":

> Hatching must be used to indicate section portions of an object, and must be made by regularly spaced oblique parallel lines spaced sufficiently apart to enable the lines to be distinguished without difficulty. . . . *The various parts of a cross section of the same item should be hatched in the same manner* and should accurately and graphically indicate the nature of the material(s) that is illustrated in cross section. *The hatching of juxtaposed different elements must be angled in a different way.*

37 C.F.R. §1.84(h)(3) (emphasis added). In cross-sectional Fig. 3, shown below, the irrigation tube 48 is hatched in the same manner as "connector 56" and continuously with it. Therefore, under §1.84, irrigation tube 48 and connector 56 must be understood as the "same item." (By contrast, the hatching of suction tube 46 is in the opposite direction from that of irrigation tube 48 and connector 56, indicating that they are different elements. Similarly, the hatching of splash shield 54 is in the opposite direction from the hatching of irrigation tube 48, thus indicating that the two are different elements in juxtaposition.) Rather than being a separate structure from the irrigation tube, "connector 56" is a portion of the illustrative coaxial irrigation tube that—in the illustrative embodiment—permits the internal suction tube to exit. Accordingly, Fig. 3 establishes that "connector 56" is not "different and separate from" the irrigation tube of the tip, but is part of it.



Second, it is settled law that, even where an illustrative embodiment of a patented device shows a two-piece construction, the patent's claims may still be infringed by a device that incorporates both structures into a single unit. For example, in *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336 (Fed. Cir. 2001), the Federal Circuit construed "cantilevered portion" (referring to a portion of a chain link) to cover an accused product in which the cantilevered portion was an integral part of a unitarily constructed chain link.[7] The court did so even though the embodiment disclosed in the patent showed a two-piece construction in which the cantilevered portion of the chain link was separate and distinct from the other portion. Under the claim construction principles set forth in *Rexnord,* Stryker's InterPulse would infringe even if the specific structure of "connector 56" were to be imported from the disclosed embodiment into Claims 9 and 30, (which it should not be), and even if "connector 56" were "different and separate from" the irrigation tube of the tip of the disclosed embodiment (which it is not).

Because there is no dispute that the connector portion of Stryker's InterPulse tip detachably connects the irrigation tube of the tip to the handpiece and provides fluid communication between the irrigation lumen of the handpiece and the irrigation tube of the tip, Stryker's tip indisputably satisfies the connector element of claims 9 and 30, properly construed.

**B. The Connector Does Not Require a "Fluid Chamber."**

Stryker's second argument with respect to the connector element is that, although no such limitation is set forth in Claims 9 or 30, the Court must disregard the plain English meaning of "connector" and construe the word to require a "fluid chamber." This argument, too, is without merit because it violates a cardinal canon of claim construction: limitations may not be imported

[7] The losing party's counsel in *Rexnord* was Stryker's counsel here, Mr. Gregory Vogler. The Federal Circuit in *Rexnord* reversed the district court's conclusion that separate structures were required based on the description of the illustrative embodiment (as Mr. Vogler argued in *Rexnord* and argues here).

from the specification into the claims. *See, e.g., Phillips*, 415 F.3d at 1323 (reaffirming prohibition against importing limitations from the specification); *Prima Tek II, LLC v. Polypap, S.A.R.I.*, 318 F.3d 1143, 1148 (Fed. Cir. 2003) ("[T]he mere fact that the patent drawings depict a particular embodiment of the patent does not operate to limit the claims to that specific configuration."); *Amgen, Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1325 (Fed. Cir. 2003) ("If we once begin to include elements not mentioned in the claim in order to limit such claim ..., we should never know where to stop.") (quoting *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 990 (Fed. Cir. 1999)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002) ("If everything in the specification were required to be read into the claims, or if structural claims were to be limited to devices operated precisely as a specification-described embodiment is operated, there would be no need for claims."); *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998) (noting canon of claim construction prohibiting importation of limitations from specification into the claims).

As noted in Davol's opening brief, there are only two circumstances when the specification may limit the normal scope of claim terms: (1) when the specification "reveal[s] a special definition given to a claim term by the patentee" or (2) when it "reveal[s] an intentional disclaimer, or disavowal, of claim scope." *Phillips*, 415 F.3d at 1316. Here, the specification reveals no "special definition" of the plain English word "connector," and there is no evidence of an "intentional disclaimer or disavowal" of the normal meaning of the word. Stryker itself does not attempt to argue otherwise. Because there is no reason to jettison the ordinary meaning of the word "connector" and interpret it to require a "fluid chamber," Stryker's InterPulse tip satisfies the "connector" limitation.

### C. Stryker Infringes the "Connector" Limitation By Equivalents.

Because Stryker's InterPulse tips literally satisfy the "connector" limitation of claims 9 and 30, it is unnecessary to consider the doctrine of equivalents. However, even if the Court were to conclude that there was no literal infringement, Stryker would still satisfy the "connector" element by equivalents. In the absence of literal infringement, infringement occurs by equivalents where the device performs the same function in the same way to achieve the same result as the patented device (the "function-way-result" test). *See, e.g., Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*, 285 F.3d 1353, 1359 (Fed. Cir. 2002) (function-way-result test for infringement under doctrine of equivalents). Here, the stated "function" of the claimed connector is to detachably connect the irrigation tube of the tip to the handpiece, the "way" is to join mating features on the tip and handpiece, and the "result" is fluid communication between the handpiece irrigation lumen and the tip irrigation tube.

Stryker admits, as it must, that the proximal end of the irrigation tube of Stryker's InterPulse tip connects to the handpiece irrigation lumen by plugging into it; and it is self-evident that plugging the irrigation tube of the InterPulse tip into the handpiece irrigation lumen achieves fluid communication. The InterPulse tips therefore accomplish substantially the same connection function in substantially the same way and with substantially the same result as the connector claimed in the patent. The connector of the InterPulse tips—the broadened portion of the irrigation tube of the tip that has the semi-circumferential ridge for engagement with the locking mechanism of the handpiece and that has an O-ring to ensure a water-tight seal—is, therefore, the equivalent of the connector of Claims 9 and 30.

This equivalency would be no less compelling even if the Court were to accept Stryker's argument that the "connector" must be "different and separate from" the irrigation tube of the tip. Under the doctrine of equivalents, it is not necessary that each equivalent function be performed

by a separate and distinct structure. *See, e.g., Intel Corp. v. United States Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed.Cir.1991) ("An equivalent must be found for every limitation of the claim somewhere in an accused device, but not necessarily in a corresponding component."). Accordingly, Stryker infringes by equivalents, regardless of whether the irrigation tube of the tip is "different and separate from" the connector.[8]

## II. **<u>The Suction and Irrigation Tubes of Stryker's InterPulse Tips Are Detachable Together From the Handpiece.</u>**

Claims 9 and 30 each claim

> [a] *tip* comprising…an irrigation tube, …[and] a suction tube for aspirating irrigation fluid from the irrigation site, …*the suction tube and irrigation tube being detachable together from the handpiece* whereby the tip can be discarded, enabling the handpiece to be reused….

(emphasis added). As a grammatical matter, the "suction tube and irrigation tube" that are detachable together from the handpiece are the suction tube and irrigation tube of the tip. Stryker does not contest this construction. Rather, Stryker deliberately misstates Davol's infringement argument and proceeds to refute that misstated argument. Thus, Stryker contends (with no citation, since none exists) that Davol

> points to the handpiece suction tubing (not the tip suction tube) of the accused InterPulse as allegedly corresponding to the "suction tube having a fluid path that channels aspirated irrigation fluid externally of the handpiece and directly to a suction source."

(Stryker Opp. at 17). Dr. Feinberg puts it even more starkly: "[Davol] points to the InterPulse handpiece suction tubing as corresponding to the 'suction tube.'" (Feinberg Decl. ¶ 22).

---

[8] Although the function-way-result inquiry is a question of fact, *see* Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 40 (1997), there is no factual dispute that the function-way-result test is met here. Accordingly, summary judgment is appropriate. *See, e.g., Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1349 (Fed. Cir. 1998) (noting that summary judgment is appropriate for "determining whether an element in an accused device is equivalent to a claimed limitation").

This is a deliberate misstatement of Davol's argument. In connection with the "fluid path that channels aspirated irrigation fluid externally of the handpiece" element that Stryker contested in its brief in support of its motion, Davol argued that the claim language meant exactly what it said ("externally of the handpiece") and did not mean that the aspirated fluid must travel "externally of the handpiece *suction tube*" as Stryker argued. (*See* Davol Combined Br. at 2–12; Exhibits 1-2 thereto.) Davol did not argue that the suction tubing that travels along the spine of the InterPulse handpiece (or alongside it if the side-mount installation method is used) is the "suction tube" of the tip. It argued that the suction tubing that travels alternately along the spine or alongside the InterPulse handpiece is part of the "fluid path that channels aspirated irrigation fluid externally of the handpiece."

Having thus misstated Davol's argument, Stryker engages in a bit of rhetorical legerdemain, implicitly "accepting" the misstated argument and then using that misstatement as a basis to argue that the InterPulse tip does not satisfy the "detachable together" limitation. Stryker argues that:

> Bard points to the handpiece suction tubing (not the tip suction tube) of the accused InterPulse as allegedly corresponding to the "suction tube having a fluid path that channels aspirated irrigation fluid externally of the handpiece and directly to a suction source." **[That is the misstatement of Davol's argument.]** The claims require that the suction and irrigation tube *of the tip* are detachable together from the handpiece. However, in the InterPulse product, the conventional tip and *the handpiece suction tubing* must be separately detached.... Since the InterPulse *handpiece suction tube* is not "detachable together" with the tip irrigation tube, claims 9 and 30 cannot be infringed.

(Stryker Opp. at 17) (bolded bracketing and italics added). There is no dispute (and Stryker's own exhibits clearly show) that the InterPulse *tip* suction tube is detachable from the handpiece together with the *tip* irrigation tube—they are a single piece of molded plastic. *See, e.g.*, Exhibit

E to Stryker's Opposition. Accordingly, the InterPulse tip satisfies the limitation "the suction tube and irrigation tube [of the tip] being detachable together from the handpiece."[9]

## III. Detaching and Discarding the InterPulse Tips Enables Handpiece Reuse.

Stryker does not dispute that the InterPulse handpiece may be reused (with a Wound Care Tubing Replacement Set) because the handpiece remains aseptic due to the fact that the aspirated fluid does not enter the handpiece. *See* Davol's Combined Br. at 12–13. In fact, in its brief, Stryker *accepts* Davol's construction of the "enabling the handpiece to be reused" element and argues that, "*under this claim construction*," there is no infringement because two additional steps are required in order to actually reuse the handpiece—removing "the handpiece suction tubing" and "replacing the handpiece suction tubing." This argument is without merit for several reasons.

First, Stryker's argument flies in the face of the long-established legal principle that "non-infringement is shown when an element or step in the claims is missing from the accused product or process, not vice-versa." *Amstar Corp. v. Envirotech Corp.*, 730 F.2d 1476, 1484 (Fed. Cir. 1984). Put another way, "[i]nfringement arises when all of the steps of a claimed method are performed, whether or not the infringer also performs additional steps." *Nomos Corp. v. Zmed, Inc.*, 226 F. Supp. 2d 323, 330 (D. Mass. 2002) (quoting *Smith & Nephew, Inc. v. Ethicon, Inc.*, 276 F.3d 1304 (Fed. Cir. 2001)). Stryker admits that its InterPulse handpiece may be reused because it has remained aseptic—that additional steps may be necessary to actually reuse it is irrelevant.

[9] Even apart from Stryker's straw-man argument, Stryker completely ignores that Stryker instructs users how to use its Wound Care Tubing Replacement Sets with the "side-mount" method of installation. *See* Davol Combined Br. at 17; Exhibit 6 thereto. When the side-mount method is used, the suction tube of the tip remains attached to the suction tubing when the tip is removed from the handpiece. Stryker does not argue that the InterPulse lacks the "detachable together" limitation when the side-mount installation method is used.

Second, Stryker is wrong in asserting that these "two additional, separate steps are not described or disclosed in the '452 patent." (Stryker Opp. at 18) (underlining in original). In the illustrative embodiment shown in the patent specification, the suction tube 48 of the tip is sealed to the "elbow-shaped conduit 60 to form a continuous suction lumen 64 from the tip distal end 32 to the tapered lower end 62 of the elbow 60 *to which the suction tubing 20 from a suction source may be connected.*" (Col. 4:20–24, emphasis added.) The "suction tubing 20" is thus separate from the inventive tip. In order to re-use the device shown in the illustrative embodiment, the tip and the suction tubing must be removed and replaced with a new tip and suction tubing. Thus, removing the suction tubing and replacing it is clearly contemplated by the patent, and the illustrative embodiment may not be reused without doing so. Stryker's erroneous claim construction would read the illustrative embodiment right out of the patent, an outcome that is highly disfavored. *See Anchor Wall Systems, Inc.*, 340 F.3d at 1308.[10]

Having shown literal infringement of this element, it is unnecessary to demonstrate infringement under the doctrine of equivalents, but the same result applies under this analysis. Here, the "function" is avoiding contamination of the handpiece, the "way" is discarding the contaminated components so that new, uncontaminated replacements can be connected, and the "result" is a handpiece that is reusable without fear of contamination. Stryker's InterPulse tips accomplish substantially the same function in substantially the same way with substantially the

---

[10] Even were the Court to adopt Stryker's erroneous argument that the removal and replacement of the suction tubing renders the InterPulse device non-infringing when used with the suction tubing located in the spine of the handpiece, Stryker's InterPulse device would still infringe the '452 patent when a user attaches a new tip and suction tubing of a Wound Care Tubing Replacement Set using the side-mount method of installation. The Wound Care Tubing Replacement Sets consist of a length of flexible tubing and a tip. According to the side-mount method of installation taught by Stryker, the suction tube of the tip is first attached to the replacement suction tubing, and then the irrigation tube of the tip is connected to the handpiece. The suction tube of the tip, with the attached suction tubing, then runs alongside the handpiece rather than in the slot on the spine. (See Exh. 6 to Davol's Combined Br.) When the procedure is complete, the tip is removed from the handpiece with the suction tubing still attached and discarded, and the handpiece is ready for re-use with a new replacement tip and tubing set. Stryker's "two extra steps" argument is not applicable in this situation.

same results, and therefore they meet the limitations of this element under the doctrine of equivalents. *See Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*, 285 F.3d 1353, 1359 (Fed. Cir. 2002).

## IV. <u>Practitioners Re-Using Stryker's InterPulse Handpieces Infringe Method Claim 10.</u>

Stryker concedes that, because of the similar language used to define the claims, the interpretation of method claim 10 is similar to the interpretation of apparatus claims 9 and 30. Therefore, for the same reasons that the InterPulse infringes claims 9 and 30, it infringes method claim 10. Davol will not repeat its arguments here.

Stryker correctly notes a distinction in terminology between claim 10 and claims 9 and 30 regarding the connector. Unlike Claims 9 and 30, which refer to the tip having "a connector," Claim 10 refers to the tip having a "connector portion." Even if the Court were to adopt Stryker's incorrect construction of the term "connector" in claims 9 and 30, the "connector portion" element in claim 10 is a broader term that clearly includes that portion of the InterPulse tip that is inserted into the irrigation lumen of the handpiece. *See Rexnord*, 274 F.3d at 1345 ("When the claim language is assessed on its own, and when the written description is examined carefully, one finds that the patentee has described an invention that embraces, through the word 'portion,' structure that may be either 'integral' or 'separate.'").

Thus, practitioners re-using Stryker's InterPulse Handpieces infringe the method of claim 10 of the '452 patent.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Davol's combined brief in support of its opposition to Stryker's motion and in support of its cross-motion for summary judgment, the Court should conclude that the InterPulse infringes the '452 patent and enter summary judgment in Davol's favor on the issue of infringement.

Dated: October 6, 2005

C.R. BARD, INC., and DAVOL INC.
By their Attorneys,

Mark A. Pogue (#3441)
Armando E. Batastini (#6016)
Edwards & Angell, LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6611 (fax)

Claire Laporte (admitted *pro hac vice*)
Mitchell J. Matorin
John Gransky
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210-2600
Tel. (617) 832-1000

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on the 6th day of October, 2005, I caused a copy of the within Reply to be served as follows:

VIA HAND DELIVERY
Joseph Avanzato, Esq.
ADLER, POLLOCK & SHEEHAN
2300 Financial Plaza
Providence, RI 02903

VIA FEDEX
Gregory J. Vogler, Esq.
Sharon A. Hwang, Esq.
McANDREWS, HELD & MALLOY, LTD.
500 West Madison Street, 34th Floor
Chicago, IL 60661