UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

C.R. BARD, INC., and
DAVOL, INC.,

v.  C.A. No. 02-515ML

STRYKER CORPORATION

## MEMORANDUM AND ORDER

Plaintiffs C.R. Bard, Inc. ("Bard") and Davol, Inc. ("Davol") (collectively "Plaintiffs") filed a complaint against Defendant Stryker Corporation ("Defendant") alleging patent infringement of United States Patent No. 6,485,452 ("452 patent"). This matter is before the Court on cross-motions for summary judgment. Defendant has filed a motion for summary judgment claiming non-infringement, or, in the alternative, invalidity of the 452 patent. Plaintiffs have filed a cross-motion for summary judgment claiming infringement of the 452 patent. For the reasons stated herein, the Court GRANTS Defendant's motion for summary judgment of non-infringement and DENIES its motion for summary judgment on invalidity of the 452 patent as moot. The Court DENIES Plaintiffs' motion for summary judgment of infringement.

### I. Background

Bard is a New Jersey corporation and the alleged assignee of the 452 patent. Davol is a Delaware corporation with its principal place of business in Cranston, Rhode Island. Davol, a wholly-owned subsidiary of Bard, engages in the manufacture and sale of medical products.

1

Defendant is a Michigan corporation that also engages in the manufacture and sale of medical products.

The inventions at issue here address a concern of health-care providers: they prevent contamination of the handpiece of a device used to rinse and clean wounds thereby rendering the handpiece component re-usable. The 452 patent was filed on November 2, 2000, and issued on November 26, 2002. It was submitted for reexamination on November 7, 2003, and was issued after reexamination on May 10, 2005. The 452 patent is for a device that includes a suction and irrigation tip removably connected to a conventional suction and irrigation handpiece. Suction is provided through a suction tube which has a bypass conduit in the tip. The bypass conduit is connectable to a suction source so that the aspirated debris passes through the tip to the suction source and does not contaminate the handpiece.

Defendant manufactures a medical irrigation device called "Interpulse." The Interpulse product includes a pistol style handpiece and detachable tips. The handpiece includes an irrigation tube that connects to a source of irrigation fluid. The flow of irrigation fluid is controlled by a handpiece trigger. The handpiece also includes suction tubing along the spine of the handpiece for connection to an external suction source. The handpiece suction tubing and tip can be removed and replaced by tubing replacement sets. The tubing replacement sets permit Interpulse customers to replace the used irrigation tip and handpiece suction tubing so that the handpiece can be used multiple times without the risk of cross-contamination.

The parties agree that claims 9, 10, 20-21, 23-24, 26, 28, and 30 of the 452 patent are in dispute. The parties also agree that claims 9, 10, and 30 are independent claims while claims 20-21, 23-24, 26 and 28 are dependent claims.

## II. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the pertinent evidence is such that a rational factfinder could render a verdict in favor of either party, and a fact is "material" if it "has the capacity to sway the outcome of the litigation under the applicable law." Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir.), cert. denied, 515 U.S. 1103 (1995). Cross motions for summary judgment "simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Barnes v. Fleet Nat'l Bank, N.A., 370 F.3d 164, 170 (1st Cir. 2004) (internal quotation marks and citation omitted).

The moving party bears the burden of showing the Court that no genuine issue of material fact exists. Nat'l Amusements, 43 F.3d at 735. Once the movant has made the requisite showing, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The Court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. Continental Cas. Co. v. Canadian Universal Ins. Co., 924 F.2d 370 (1st Cir 1991). The legal standard for summary judgment is not changed when parties file cross motions for summary judgment. Adria International Group, Inc. v. Ferre Development, Inc., 241 F.3d 103 (1st Cir. 2001).

In the context of patent infringement, summary judgment is appropriate if "no reasonable

jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents." Gart v. Logitech, Inc., 254 F.3d 1334, 1339 (Fed. Cir. 2001), cert. denied, 534 U.S. 1114 (2002). The ultimate burden of establishing infringement is on the patentee suing for infringement, thus an accused infringer seeking summary judgment of non-infringement "may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence . . . fails to establish a material issue of fact essential to the patentee's case." Novartis Corp. v. Ben Venue Laboratories, Inc., 271 F.3d 1043, 1046 (Fed. Cir. 2001).

### III. The Law

To establish patent infringement "every limitation set forth in a patent claim must be found in an accused product . . . exactly or by a substantial equivalent." Laitram Corp. v. Rexnord, Inc., 939 F.2d 1533, 1535 (Fed. Cir. 1991). "The patentee bears the burden of proving infringement by a preponderance of the evidence." Id. The determination of an alleged infringement requires a two-step analysis. Callicrate v. Wadsworth Manufacturing, Inc., 427 F.3d 1361 (Fed. Cir. 2005). The court first determines the scope and the meaning of the patent claims asserted. Id. The first step, claim's construction, is a question of law. Id. The second step, determining whether the construed claims encompass the accused device, is a question of fact and requires a "determination that every claim limitation or its equivalent be found in the accused device." Id. at 1366 (internal quotation marks and citation omitted).

Claim's construction begins with the words of a claim. The claims of a patent "define the invention to which the patentee is entitled the right to exclude." Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc., 381 F.3d 1111, 1115 (Fed. Cir. 2004). The claims in the

patent "are the sole measure of the grant." Id. (internal quotation marks and citation omitted). A court construing a patent claim seeks to give a claim "the meaning it would have to a person of ordinary skill in the art at the time of the invention." Id. at 1116. This is an objective inquiry and courts look to the sources "available to the public that show what a person of skill in the art would have understood disputed claim language to mean." Id. Sources include the words of the claims, the patent specification, the prosecution history and "extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." Id.

Courts should first look to the intrinsic evidence of record: the patent (including the claims), the specification and the prosecution history. Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576 (Fed. Cir. 1996). Courts begin the intrinsic analysis by looking to the words of the claims to define the scope of the patented invention. Id. Words of a claim are generally given their ordinary and customary meaning. Id. Ordinary and customary meaning of a claim term "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention. . . ." Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005), cert. denied, 126 S. Ct. 1332 (2006). The "person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent. . . ." Id. The "context of the surrounding words of the claim . . . must be considered in determining the ordinary and customary meaning of those terms." Id. at 1314 (internal quotation marks and citation omitted). In some instances, "the use of a term within the claim provides a firm basis for construing the term." Id. The use of a term in one claim "can often illuminate the meaning of the same term in other claims." Id.

Claims must be read in view of the specification. Id. The patent specification includes

the claims, the abstract, background of the invention, summary of the invention, and detailed description of the patent. Taltech Ltd. v. Esquel Enterprises Ltd., 410 F. Supp. 2d 977 (W.D. Wash. 2006). The specification is "highly relevant" to the claim's construction analysis. Vitronics, 90 F.3d at 1582. "Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." Id.

> [T]he specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs. In other cases, the specification may reveal an intentional disclaimer, or disavowal, of claim scope by the inventor.

Phillips, 415 F.3d at 1316 (citation omitted).

Courts are cautioned against limiting the invention to "preferred embodiments or specific examples in the specification." Teleflex, Inc. v. Ficosa North America Corp., 299 F.3d 1313, 1328 (Fed. Cir. 2002) (internal quotation marks and citation omitted). Courts recognize that the distinction between reading a claim in view of the specification and importing limitations from the specification can be a difficult one to apply. Phillips, 415 F.3d at 1323.

In addition to consulting the specification, courts "should also consider the patent's prosecution history, if it is in evidence." Phillips, 415 F.3d at 1317 (internal quotation marks and citation omitted). Because the prosecution history represents negotiation between the Patent and Trademark Office and the applicant "it often lacks the clarity of the specification and thus is less useful for claim construction purposes." Id. Nevertheless, the prosecution history can be helpful "by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution. . . ." Id.

An analysis of the intrinsic evidence alone will usually resolve any ambiguity in a

6

disputed claim term. <u>Vitronics</u>, 90 F.3d at 1583. Since the Court does not rely upon any extrinsic evidence in its claim's construction analysis, the Court need not summarize the law surrounding the applicability and weight of extrinsic evidence.

Step I
Claim's Construction Analysis

<u>Claims 9 and 30</u>

The pertinent language in claims 9 and 30 describe the detachable

> "tip [as] comprising . . . a <u>suction tube</u> for aspirating irrigation fluid from the irrigation site, <u>the suction tube having a fluid path that channels aspirated irrigation fluid externally of the handpiece</u> and directly to a suction source, the suction tube and irrigation tube being detachable together from the handpiece whereby the tip can be discarded, enabling the handpiece to be reused. . . ."[1]

452 Patent, Col. 8: 11, 18-24; Reexamination Cert., Col. 1: 55, 62-66; Col. 2: 1-2, 50-51, 58-64 (emphasis added). The specific language that Defendant identifies as the subject of this dispute is a "<u>tip</u> comprising" a "<u>suction tube having a fluid path that channels aspirated irrigation fluid externally of the handpiece</u> and directly to a suction source." Memorandum in Support of Defendant Stryker Corp.'s Renewed Motion for Summary Judgment at 6 (emphasis added). The parties concentrate on the meaning of the phrase "externally of the handpiece."

The Court first looks to the specific words in the claims and the context of the surrounding words. <u>See generally</u> <u>Phillips</u>, 415 F.3d at 1314. Both claims require that the detachable tip be comprised of a suction tube which has a fluid aspiration path that travels externally of the handipece. The most telling language in the patent is the consistent and

---

[1] The Court notes that claim 30 ends at the term "reused" while claim 9, as a result of reexamination, continues after the term "reused."

unequivocal claims' language that describes the tip.

The Court finds that the description of the tip in the patent's other claims gives considerable guidance in interpreting claims 9 and 30. See Phillips, 415 F.3d at 1314 ("[T]he usage of a term in one claim can often illuminate the meaning of the same term in other claims."); see also Fromson v. Advance Offset Plate, Inc., 720 F.2d 1565, 1570 (Fed. Cir. 1983) ("Significant evidence of the scope of a particular claim can be found on review of other claims."). Both claims 1 and 4 describe the tip as comprising "a <u>suction tube</u> for aspirating irrigation fluid from the irrigation site, <u>the suction tube having a fluid bypass path within the detachable tip</u> which channels aspirated irrigation fluid directly to a suction source so that aspirated fluid within the suction tube does not enter" the handpiece. 452 Patent, Col. 7: 11-17, 31-32, 38-43 (emphasis added). The language in claims 1 and 4 require that the <u>tip</u> include both a suction tube and a fluid bypass path.

Claim 11 provides that the tip have a "<u>suction tube</u> for aspirating fluid from the site <u>and a bypass fluid path</u> in fluid communication with the tip suction tube. . . ." 452 Patent, Col. 8: 58-61. Claim 11 states that the tip have a suction tube and a bypass fluid path. Claim 7 provides for a "tip comprising . . . a suction tube for aspirating fluid from the irrigation site; and . . . <u>the suction tube being in communication with a bypass fluid path which bypasses the interior of the handpiece</u> to prevent the aspirated fluid within the suction tube from entering the interior of the handpiece." 452 Patent, Col. 7: 56, 58-59, 62-65; Reexamination Certificate, Col. 1: 34, 36-37, 40-43 (emphasis added). Claim 6 describes the tip "as defined by claim 4 wherein the fluid bypass path terminates at an open end suitable for connection to a suction source." 452 Patent, Col. 7: 49-51. Claim 15 provides that the tip have a "fluid bypass path associated with" it. 452

Patent, Col. 9: 13. A consistent theme is emphasized throughout the claims – that the tip include a suction tube and a bypass fluid path.[2]

The Court concentrates on the description of the tip throughout the claims. "[C]laim terms are normally used consistently throughout the patent. . . ." Phillips, 415 F.3d at 1314. The claims' language consistently and clearly claims that the tip include a fluid bypass path *within* the tip. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." Id. Reading the terms describing the tip in the claims in accord with their commonly understood meaning and in a consistent manner (as evidenced by their similar application throughout the claims) the Court concludes that a person of ordinary skill in the art would interpret the language of claims 9 and 30 as requiring that the device include a bypass path within the tip. The claims' language is clear in that the only manner in which the aspirated fluid flows externally of the handpiece is as a direct result of the bypass path contained within the tip. This interpretation is consistent with the clear purpose of the invention in avoiding contamination of the handpiece.

This interpretation is also consistent with the abstract. The abstract states that

> "[s]uction is provided through a suction tube which has a bypass conduit in the tip. The bypass conduit is directly connectable to a suction source so that aspirated debris passes through the tip to the suction source. The suction tube thus prevents aspirated debris from entering the conventional suction tube in the handpiece and contaminating the handpiece."

452 Patent, Abstract (emphasis added). Courts "frequently look[] to the abstract to determine the

---

[2] It is clear to the Court that the patentee used the phrases "fluid path," "fluid bypass path," and "bypass fluid path" interchangeably in the patent and that they should be construed in a similar manner. See generally Lawlor v. Nike, Inc., 2005 WL 1459486 (D. Mass. 2005).

scope of the invention. . . ." Hill-Rom Co., Inc. v. Kinetic Concepts, Inc., 209 F.3d 1337, 1341 n.* (Fed. Cir. 2000). The Court finds that the specific and unambiguous language of the abstract provides that the tip contain a bypass path – noted as a "bypass conduit."

The summary of the invention also supports the premise that the tip contain a bypass path. "It is among the objects of the invention to provide combination suction and irrigation tip that is detachably connectible to a handpiece and in which biological debris aspirated through the suction lumen bypasses the handpiece." 452 Patent, Col. 2: 53-56 (emphasis added). The language describing the tip is consistent with the claim's requirement that the tip contain a fluid bypass path that allows the aspirated fluid to bypass the handpiece and proceed directly to a suction source.

The illustrative embodiments of the 452 patent also emphasize the premise that the tip include a fluid bypass conduit.





FIG. 2

FIG. 3

> The tip 16 includes an inner (suction) tube 46 coaxially aligned within an outer (irrigation) tube 48, a flexible, funnel-shaped splash shield 54, and a connector 56. The suction tube 46 provides a direct pathway 50 for suction from the tip distal end 32 to a suction source . . . . Aspirated debris therefore never enters the handpiece 10.

452 Patent, Col. 3: 67; Col. 4: 1-7 (emphasis added).

> The suction tube 46 is supported within the irrigation tube 48 at one end by an outlet nozzle 58, and at the other end by an <u>elbow shaped conduit</u> 60. . . . The suction tube 46 is sealed to both the outlet nozzle 58 <u>and elbow-shaped conduit</u> 60 to form a continuous suction lumen 64 from the tip distal end 32 to the tapered lower end 62 of the elbow 60 to which the suction tubing 20 from a suction source may be connected.

452 Patent, Col. 4: 13-15, 20-24 (emphasis added).

> Although the <u>elbow shaped conduit</u> 60 is shown as extending from the promimal end of the suction tube 46, <u>it may depend from any part of the suction tube 46.</u> In an alternative embodiment, for example, the suction tube 46 is about half the size as it is in the preferred embodiment and the elbow shaped conduit 60 may connect to the suction tube 46 within the irrigation tube 48.

452 Patent, Col. 4: 25-31 (emphasis added). "When in use, the tip 16 is connected to the handpiece 10 and the flexible suction tubing 20 is connected to the tapered lower end 62 of the <u>elbow shaped conduit</u> 60." 452 Patent, Col. 6: 45-47 (emphasis added).

This language is consistent with the claims' language that the tip contain a bypass path. The tip contains an alternative avenue, represented in one of the embodiments by an elbow shaped conduit, in which the aspirated debris travels. The Court is mindful that this is not the only embodiment of the bypass conduit. Most telling is the specification's language that "[a]lthough the <u>elbow shaped conduit</u> 60 is shown as extending from the proximal end of the suction tube 46, <u>it may depend from any part of the suction tube</u> 46." 452 Patent, Col. 4: 25-27 (emphasis added). This language is clear and consistent with the claims' language – that although the bypass conduit <u>may</u> extend from any portion of the suction tube, it extends from the suction tube in the tip. The Court finds that the language of the illustrative embodiment does not limit the placement of the bypass conduit to where it originates from the tip (as noted by the permissive language "it <u>may</u> depend from any part of the suction tube") but it does limit the conduit to placement somewhere about the tip.

The prosecution history also supports the interpretation that the tip contain a bypass conduit. A preliminary amendment provided that:

> The invention provides an arrangement by which the flow path of aspirated material is diverted away from and bypasses the handpiece. <u>To that end, the detachable tip 16 has a suction tube 46 with a conduit 60 that defines a fluid</u>

12

> bypass path that prevents aspirated material from being channeled into contact with the handpiece 10 . . . .

Memorandum in Support of Defendant Stryker Corp.'s Renewed Motion for Summary Judgment Ex. C. at 5 (emphasis added). Most notable in this passage is the clear and concise statement that the tip "has a suction tube . . . with a conduit . . . that defines a fluid bypass path. . . ." This language is consistent with the claims' language that the detachable tip include a suction tube with a bypass path.

A person of ordinary skill in the art is deemed to read the claim terms not only in the "context of the particular claim in which the disputed term appears, but in the context of the entire patent. . . ." Phillips, 415 F.3d 1313. The Court finds that when the patent is read as a whole – it is clear that this is one of the instances where the meaning of the claim terms is readily apparent to "lay judges" as a result of the clear and consistent application of similar language describing the tip throughout the patent. See generally id. at 1314. The manner in which the tip directs the aspirated fluid "externally of the handpiece" is as a direct result of the bypass path contained in the tip. The Court concludes that a person of ordinary skill in the art would understand that the language of claims 9 and 30 requiring a "tip comprising" a "suction tube having a fluid path that channels aspirated irrigation fluid externally of the handpiece and directly to a suction source" requires that the tip include a bypass path.

Claim 10

Claim 10 requires "connecting a detachable tip to the handpiece. . . the tip comprising an irrigation tube . . . and a suction tube for aspirating irrigation fluid from the irrigation site . . . aspirating spent irrigation fluid from the irrigation site through the suction tube of the tip and

directing the aspirated irrigation fluid along a path that is disposed exteriorly of the handpiece...." 452 Patent, Col. 8: 31-32, 33-34, 40-43 (emphasis added). As noted above, it is clear from the patent, that in order for the aspirated fluid to be disposed of externally of the handpiece, the tip must include a bypass path. Claim 10 states that the tip includes a suction tube that aspirates irrigation fluid along a path that is disposed "exteriorly of the handpiece." The Court reads this claim consistent with the entire patent and concludes that a person of ordinary skill in the art would understand that in order for the tip to dispose of the aspirated fluid "exteriorly of the handpiece" the tip must contain a fluid bypass path. Consequently, the Court finds that the language in claim 10 must be read in a manner consistent with the language in claims 9 and 30 and that a person of ordinary skill in the art would conclude that the language of claim 10 requires that the tip include a bypass path.

## Step II
## Do the Claims Encompass the Accused Device?

### Literal Infringement

"Literal infringement is found where the accused device falls within the scope of the asserted claims as properly interpreted." Lantech, Inc. v. Keip Machine Co., 32 F.3d 542, 547 (Fed. Cir. 1994). For literal infringement to be found - every limitation of the patent claim must be found in the accused device. General Mills, Inc. v. Hunt-Wesson, Inc., 103 F.3d 978 (Fed. Cir. 1997). "If even one limitation is missing or not met as claimed, there is no literal infringement." Mas-Hamilton Group v. LaGard, Inc., 156 F.3d 1206, 1211 (Fed. Cir. 1998).

Having concluded that the patent language requires that the tip include a bypass path, the Court must look to Defendant's device, more specifically its tip, to determine if it literally

14

infringes the 452 patent. The complaint identifies Defendant's "Interpulse" as the alleged infringing device. The parties' papers submitted with respect to Stryker's motion for summary judgment both identify and depict the same device as the alleged infringer. At the hearing on the motion, Plaintiff presented a pictorial exhibit to the Court which identified the alleged infringing device as being consistent with the depictions in the parties' papers. December 1, 2005, Exhibit By Foley Hoag LLP. In fact, at the hearing, the Court was presented with the alleged infringing device which appeared identical to the device depicted in the parties' papers. The Court looks to and compares the devices' tips. Both tips are detachable and both tips contain a suction and irrigation tube. It is, however, quite apparent that Defendant's tip does not contain a bypass path. If a claim limitation is missing from the accused device, there is no literal infringement. Mas-Hamilton Group, 156 F.3d at 1211. Since the 452 patent claims a bypass path and that claim limitation is missing in Defendant's Interpulse product, there is no literal infringement. As a result, because Defendant's tip does not contain a bypass path, no literal infringement exits with respect to claims 9, 10, or 30.



Infringement Under the Doctrine of Equivalents

In order for a court to find infringement under the doctrine of equivalents, "the accused product [must] contain each limitation of the claim or its equivalent." Leggett & Platt, Inc. v. Hickory Springs Mfg. Co., 285 F.3d 1353, 1358-59 (Fed. Cir. 2002). A claim element is present in an accused device under the doctrine of equivalents if "only insubstantial differences

15

distinguish the missing claim element from the corresponding aspects of the accused device." <u>Id.</u> at 1359 (internal quotation marks and citation omitted). "The analysis focuses on whether the element in the accused device performs substantially the same function in substantially the same way to obtain the same result as the claim limitation." <u>Aquatex Industries, Inc. v. Techniche Solutions</u>, 419 F.3d 1374, 1382 (Fed. Cir. 2005) (internal quotation marks and citation omitted). The Court again looks to the tip in analyzing the question of infringement under the doctrine of equivalents. As noted above, independent claims 9, 10, and 30 require that the tip have a bypass path. Both products are designed to allow the handpiece to be reused by avoiding contamination. It is apparent, however, that the devices accomplish this purpose by substantially different means. The means that distinguishes the devices is the difference in the tip. The 452 patent contemplates the use of a specifically designed tip that includes a bypass path. Defendant's tip does not include any type of bypass path or conduit. The tips in the devices are configured in substantially different ways. Although the devices may accomplish the same result, the devices do it in a manner that is substantially different. Consequently, Defendant's device does not infringe claims 9, 10, and 30 of the 452 patent under the doctrine of equivalents.

## IV. Conclusion

Accordingly, summary judgment of non-infringement is proper as no reasonable jury could find that Defendant's device meets every limitation in the disputed independent claims 9, 10, or 30. "One who does not infringe an independent claim cannot infringe a claim dependent on ... that claim." <u>Wahpeton Canvas Co., Inc. v. Frontier, Inc.</u>, 870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989). Consequently, summary judgment of non-infringement is also granted on dependent claims 20, 21, 23, 24, 26 and 28.

For the above reasons, the motion of Defendant for entry of summary judgment of non-infringement is GRANTED.  The motion of Defendant for entry of summary judgment of invalidity of the 452 patent is DENIED as moot.  The motion of Plaintiffs for entry of summary judgment is DENIED.

SO ORDERED

_____
Mary M. Lisi
United States District Judge
April 4, 2006